**2013 UT App 177**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
PAUL JOHN HATTRICH,
Defendant and Appellant.

Opinion
No. 20111091-CA
Filed July 18, 2013

Sixth District, Richfield Department
The Honorable Marvin Bagley
No. 091600098

Grant W.P. Morrison and Laura J. Fuller, Attorneys
for Appellant
John E. Swallow and Jeffrey S. Gray, Attorneys for
Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES CAROLYN B. MCHUGH and STEPHEN L. ROTH
concurred.

CHRISTIANSEN, Judge:

¶1    Defendant Paul John Hattrich appeals his convictions for
three counts of first degree felony sodomy on a child. We affirm.

BACKGROUND

¶2    Between 1994 and 1999, Defendant sexually victimized five
juveniles. In May 2009, the State filed an information charging

Defendant with thirty sexual offenses against children. Over the next two years, the State amended the information four times.

¶3     Prior to the preliminary hearing, Defendant filed three motions: (1) a motion for a change of venue, (2) a motion to dismiss nine counts of the Second Amended Information, and (3) a motion to sever the counts for trial. The trial court denied outright the venue and dismissal motions. Also, the trial court granted the motion to sever as to counts 26 and 27—dealing in material harmful to a minor—but denied the motion as to the remaining counts.

¶4     Following the trial court's ruling on these motions, but before the scheduled preliminary hearing, the State filed a Third Amended Information on March 2, 2011, charging Defendant with twenty-seven counts of various sexual offenses involving the five victims. The counts in the information included two counts of rape of a child, both first degree felonies, *see* Utah Code Ann. § 76-5-402.1(1), (2) (Michie Supp. 1996); thirteen counts of sodomy on a child, all first degree felonies, *see id.* § 76-5-403.1(1), (2); nine counts of aggravated sexual abuse of a child, all first degree felonies, *see id.* § 76-5-404.1(1), (3)(b)(d), (4); one count of sexual abuse of a child, a second degree felony, *see id.* § 76-5-404.1(1), (2); and two counts of dealing in material harmful to a minor, both third degree felonies, *see id.* § 76-10-1206(1)(a), (3) (Michie 1995).

¶5     The preliminary hearing was held on June 21, 2011, more than three months after the State filed the Third Amended Information. At the close of that hearing, the magistrate bound Defendant over for trial on all counts except count 21, third degree felony sexual abuse of a child, which the magistrate dismissed. Defendant subsequently filed three additional motions: (1) a motion to dismiss the Third Amended Information based upon multiplicity concerns or, in the alternative, to reduce the counts; (2) a motion to quash bindover; and (3) a motion to dismiss the Third Amended Information for constitutional and rule violations. The trial court denied all three motions. The State ultimately filed a

Fourth Amended Information, omitting the sexual abuse count dismissed at the preliminary hearing and the two counts of dealing in material harmful to a minor that the trial court had previously severed. Trial was scheduled to begin August 22, 2011.

¶6     Prior to trial, Defendant entered into a plea agreement with the State. He pleaded guilty to three counts of sodomy on a child in exchange for dismissal of the remaining counts. Defendant's guilty pleas were entered "conditional on Defendant's right to appeal any issues which ha[d] arisen or been litigated in this case." Thereafter, the trial court sentenced Defendant to a prison term of fifteen years to life for each count and ordered the sentences to run concurrently. Defendant appeals, challenging his convictions on various grounds.

ISSUES AND STANDARDS OF REVIEW

¶7     Defendant first argues that the trial court erred in denying his motion for a change of venue. The decision to grant or deny a motion for a change of venue "lies within the sound discretion of the trial court . . . and [an appellate court] will not disturb that decision unless an abuse of discretion is shown." *State v. James*, 767 P.2d 549, 551 (Utah 1989).

¶8     Defendant next contends that the trial court improperly denied his motion to sever the counts for trial. "[T]he grant or denial of severance is a matter within the discretion of the trial judge, so we reverse [a denial] only if the trial judge's refusal to sever charges is a clear abuse of discretion in that it sacrifices the defendant's right to a fundamentally fair trial." *State v. Burke*, 2011 UT App 168, ¶ 15, 256 P.3d 1102 (alterations in original) (citation and internal quotation marks omitted).

¶9     Third, Defendant challenges the trial court's denial of his motion to quash bindover. "When the review of a [trial] court's denial of a motion to quash a bindover implicates questions of law,

we review for correctness, giving no deference to the [trial] court's legal conclusions." *State v. Timmerman*, 2009 UT 58, ¶ 7, 218 P.3d 590.

¶10    Defendant also argues that the trial court erred in denying his two motions to dismiss the Third Amended Information for violation of the rules against multiplicity and constitutional and rule violations. "[T]he propriety of a trial court's decision to grant or deny a motion to dismiss is a question of law that we review for correctness." *State v. Salazar*, 2005 UT App 241, ¶ 4, 114 P.3d 1170 (alteration in original) (citation and internal quotation marks omitted).

¶11    Finally, Defendant argues that there were no exigent circumstances to justify his warrantless arrest in the privacy of his home. Even though this issue was not preserved before the trial court, Defendant asserts that appellate review is appropriate because exceptional circumstances exist. *See generally State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867 ("When a party fails to preserve an issue for appeal, [appellate courts] will address the issue only if (1) the appellant establishes that the district court committed plain error, (2) exceptional circumstances exist, or (3) in some situations, if the appellant raises a claim of ineffective assistance of counsel in failing to preserve the issue." (citations and internal quotation marks omitted)).

ANALYSIS

I. The Trial Court Acted Within Its Discretion by Denying
Defendant's Motion To Change Venue.

¶12    Defendant first argues that the trial court abused its discretion by denying his motion to change venue. "The right to trial by an impartial jury is guaranteed by both the United States Constitution and the Utah Constitution." *State v. Stubbs*, 2005 UT 65, ¶ 9, 123 P.3d 407; *see also* U.S. Const. amend. VI; Utah Const.

art. 1, § 12. Furthermore, rule 29 of the Utah Rules of Criminal Procedure provides, "If the prosecution or a defendant in a criminal action believes that a fair and impartial trial cannot be had in the jurisdiction where the action is pending, either may, by motion, . . . ask to have the trial of the case transferred to another jurisdiction." Utah R. Crim. P. 29(d)(1). Defendant asserts that he could not receive a fair and impartial trial in Sevier County—the location where Defendant committed the criminal acts charged in this case.

¶13   Criminal defendants may properly challenge a trial court's denial of a change of venue motion following conviction by a jury. When such is the case, we consider "whether [the] defendant was ultimately tried by a fair and impartial jury." *State v. Widdison*, 2001 UT 60, ¶ 38, 28 P.3d 1278. However, when a defendant challenges a denial of a change of venue motion on interlocutory appeal, we employ a totality of the circumstances test. *See State v. James*, 767 P.2d 549, 552 (Utah 1989). The Utah Supreme Court has identified four factors courts should examine in making this determination. *See id.* "Factors to be considered include (1) the standing of the victim and the accused in the community; (2) the size of the community; (3) the nature and gravity of the offense; and (4) the nature and extent of publicity." *Id*. Under this framework, the burden is on the defendant to raise a "reasonable likelihood" that a fair and impartial trial could not have been afforded to him or her. *See id.* Because Defendant's appeal follows the entry of his guilty plea, as opposed to a conviction by a jury, it is impossible "for us to assess the composition of the jury as it was actually impaneled to determine whether [Defendant] was ultimately tried by a fair and impartial jury." *See Stubbs*, 2005 UT 65, ¶ 16. Therefore, we will review the trial court's denial of Defendant's motion to change venue for an abuse of discretion by applying the *James* factors in light of the totality of the circumstances of this case.

¶14   A review of the *James* factors demonstrates that the trial court did not abuse its discretion by denying Defendant's motion to change venue. First, with regard to the standing of Defendant

and the victims in the community, Defendant argues that his employment as a Federal Express delivery person routinely placed him in contact with residents of Sevier County. Defendant therefore contends that his "employment accentuate[d] the difficulty of seating a jury, which has not been touched in some way, either directly or through family or friends, with this crime." Defendant does not identify how his possible contact with the members of his Sevier County community may have negatively affected the impartiality of a potential jury pool. Indeed, one could infer the opposite—i.e., that Defendant's personal relationships with potential jurors actually lean in his favor. Furthermore, because neither Defendant nor any of the victims were public figures or officials, there was little chance that their standing in the community would have unduly influenced the outcome of a trial.

¶15    Second, Defendant argues that the "small, tight-knit nature of the community in Sevier County [would have] impaired the fairness and impartiality of [his] trial." Defendant again fails to specify how exactly this factor would have prejudiced his trial.

¶16    The third factor—consideration of the nature and gravity of the offense—is more compelling. Defendant was charged with multiple counts of rape of a child, sodomy on a child, and aggravated sexual abuse of a child. Obviously, the heinous nature of these crimes is likely to have some effect on the local unincorporated community of Sevier, which is where the offenses actually occurred and where the population is about 100. The population of Sevier County is about 20,000. *See State & County QuickFacts, Sevier County, Utah,* U.S. Census Bureau http://quickfacts.census.gov/qfd/states/49/49041.html (last visited July 10, 2013). However, the State makes a persuasive point that the crimes were alleged to have occurred between 1994 and 1999, more than ten years before Defendant was first charged in 2009. Also, by the time the charges were filed and trial was to be scheduled, the victims had since grown into adulthood, moved outside Sevier County, and were working professionals with careers in such areas as the military and medicine. Although time

likely has not minimized the impact of these crimes on the victims themselves, we agree with the State that "the passion [in the community] that may arise from the seriousness of the charges is likely tempered by the passing of time and the fact that the victims have largely moved on with their lives."

¶17 The final *James* factor requires review of the nature and extent of the publicity surrounding the charges. Defendant claims that "[t]here had been publicity . . . in the local newspapers . . . and by virtue of the small community a shocking awareness that Defendant had surfaced as an apparent child molester." However, Defendant fails to identify any record evidence to demonstrate which specific newspapers carried the story or any example of "shocking awareness" in the community. Indeed, the trial court found that "[t]here ha[d] been no publicity to keep from getting [to] a jury" and that "[t]his case has been kept quiet in [Sevier] county."

¶18 Considering the totality of the circumstances, Defendant has not raised a "reasonable likelihood" that a fair and impartial trial could not have been afforded to him. Accordingly, we conclude that the trial court did not abuse its discretion by denying Defendant's motion to change venue.

## II. The Trial Court Acted Within Its Discretion by Denying Defendant's Motion To Sever the Remaining Counts.

¶19 Prior to the preliminary hearing, Defendant filed a motion to sever the twenty-seven counts contained in the Second Amended Information. The trial court granted Defendant's motion as to counts 26 and 27—dealing in material harmful to a minor—but denied the motion as to the remaining counts.[1] On

---

1. Defendant argues that the trial court "should have granted the motion in respect to all of the counts," which he requested to be joined and severed from the remaining counts as follows: counts

(continued...)

appeal, Defendant argues that the counts should have been severed in order to prevent prejudice. *See* Utah Code Ann. § 77-8a-1(4)(a) (LexisNexis 2012) ("If the court finds a defendant or the prosecution is prejudiced by a joinder of offenses or defendants in an indictment or information or by a joinder for trial together, the court shall order an election of separate trials of separate counts, grant a severance of defendants, or provide other relief as justice requires."). According to Defendant, the "risk of prejudice . . . was significant, if only by the sheer number of charges and which charges are, short of being a capital offense, . . . the most serious offenses in the State of Utah."

¶20    Defendant fails to persuade us, however, that he faced any actual prejudice. Rather, his argument consists of conclusory statements regarding the respective counts in the information without any discussion of how joinder of those counts prejudiced him under the law. For example, Defendant notes that the elements of rape of a child are different from the elements of the other offenses with which he is charged but then simply concludes, "These counts should have been severed from the others." Defendant fails to explain how or why the difference in the statutory elements is relevant or prejudicial in this circumstance. Furthermore, from the minutes entered at the motion hearing, it appears that the court based its denial of Defendant's motion on

---

1. (...continued)
1 and 2, rape of a child; counts 3, 4, 5, 6, 7, 8, 9, and 10, sodomy on a child; counts 11, 12, 13, 14, 15, 16, 17, and 18, aggravated sexual abuse of a child; counts 19 and 20, sodomy on a child; counts 21 and 22, sexual abuse of a child and aggravated sexual abuse of a child, respectively; counts 23, 24, and 25, sodomy on a child; and counts 26 and 27, dealing in material harmful to a minor. In his motion, Defendant argued that "[e]ach of the joined together counts should be tried in a separate trial from the other joined together [c]ounts." Severing the counts according to Defendant's request would have required seven separate trials.

"affidavits filed and Utah law." The minutes also indicate that the court found a "lack of prejudice in trying the charges together" and that it made the "same analysis that the Court of Appeals made in the *Milton Bradley* case." At no point does Defendant's brief refer to any supporting affidavits, the trial court's written ruling, or analysis of the "*Milton Bradley*" case. In short, Defendant's argument is under developed and leaves us unconvinced that he was prejudiced by the joinder. *See* Utah. R. App. P. 24(a)(9).

¶21 Moreover, Utah Code section 77-8a-1 allows for joinder of multiple felony counts in the same information so long as "each offense is a separate count and if the offenses charged are . . . based on the same conduct or are otherwise connected [together[2]] in their commission; or . . . alleged to have been part of a common scheme or plan." *See* Utah Code Ann. § 77-8a-1(1). Based on the motion hearing minutes, the trial court determined that after examining the "affidavits filed and Utah law," "there was a common scheme over a few years time." There was only one affidavit submitted—that of the detective involved in the case. A review of this affidavit confirms that the crimes alleged in the information were connected in their commission and part of a common scheme or plan.[3] Because the charges were properly joined and because

---

2. As observed in *State v. Lamb*, 2013 UT App 5, 294 P.3d 639,

> The previous publication of the Utah Code contains the word 'together' as indicated in the quoted language. *See* Utah Code Ann. § 77-8a-1 (LexisNexis 2008). Although this word is not included in the most recent publication of the Utah Code, *see id.* (2012), this omission appears to be inadvertent because the statute has not been amended since the previous publication, *see id.* history.

*Lamb*, 2013 UT App. 5, ¶ 7 n.3.

3. In his affidavit, the detective stated, among other things, that

(continued...)

Defendant has failed to demonstrate any prejudice, the trial court did not abuse its discretion by denying Defendant's motion to sever.

### III. The Trial Court Did Not Err in Denying Defendant's Motion To Quash Bindover.

¶22    Defendant filed a motion to quash bindover following the preliminary hearing, which motion the trial court denied. On appeal, Defendant's challenge to the trial court's denial of his motion to quash is three fold. He contends that the magistrate (1) applied the wrong bindover standard at the preliminary hearing, (2) should have granted Defendant's motion to continue the preliminary hearing, and (3) should not have allowed the State to introduce the written statement of a witness at the preliminary hearing in lieu of oral testimony.

A.    The Magistrate Applied the Correct Bindover Standard.

---

3. (...continued)
(1) "[a]buse was occurring simultaneously to all three victims during the years of 1994, 1995, and 1996"; (2) "[a]ll of the abuse began under similar circumstances of grooming" and Defendant's "grooming pattern was the same for each [victim]," including enticing the victims to his home, introducing them to pornographic photos and movies, discussing adolescent sexual issues, befriending each victim's family, and eventually progressing to casual touching and then sexual contact; (3) "[a]ll of the abuse that has been charged occurred at the Defendant's residence in Sevier, Utah, except one incident at the river near his home"; (4) [e]ach of the victims' descriptions of Defendant's residence were "so similar" that it was "evident that [they] spent a great deal of time there"; and (5) "Defendant perpetrated upon each [victim] tens if not hundreds of times" the same types of sexual abuse.

¶23    At the close of the preliminary hearing, the magistrate stated, "At a preliminary hearing stage, the standard of proof is probable cause, probable cause that something occurred. I like the definition of probable cause as *a reason to believe*, and at the stage of preliminary hearing, the Court is to take all inferences in favor of the State." (Emphasis added.) The Utah Supreme Court has explained that "a defendant may be bound over for trial only if the prosecution produces evidence sufficient to demonstrate probable cause that the charged crimes were committed," and that a "showing of probable cause entails only the presentation of evidence sufficient to support *a reasonable belief* that the defendant committed the charged crime." *State v. Ramirez,* 2012 UT 59, ¶¶ 8–9, 289 P.3d 444 (emphasis added) (citation and internal quotation marks omitted).

¶24    Defendant argues that the magistrate's reference to "a reason to believe" is distinct from the applicable standard of a "reasonable belief." As an initial matter, Defendant has not preserved this issue for appeal because he failed to raise it before the trial court. Additionally, Defendant's plea agreement limits the issues he may raise on appeal to those "which have arisen or been litigated in this case." Defendant's failure to raise or litigate this issue below precludes him from now arguing it on appeal.

¶25    Nevertheless, Defendant's argument lacks merit. Even though we acknowledge that a "reason to believe" is not the same as "a reasonable belief," the magistrate applied the probable cause standard which is the correct standard for bindover at a preliminary hearing. Defendant would have us dissect a singular, passive, oral statement made by the magistrate in describing the probable cause standard as grounds for reversing his bindover. Such an inquiry focuses on a possible semantic misstatement rather than the law actually applied. The magistrate explicitly stated that after evaluating the facts as they were presented to him, he found "that there [was] *probable cause* to believe that Defendant Hattrich committed all of the counts that are alleged with the exception of Count No. 21." (Emphasis added.) Defendant does not challenge

the probable cause determination on any other ground, such as the sufficiency of the evidence. Accordingly, we conclude that the magistrate applied the correct bindover standard.

B.      Defendant Waived His Challenge to the Magistrate's Denial of His Motion to Continue.

¶26    On the morning of the preliminary hearing, the State informed Defendant's counsel that one of the State's three witnesses scheduled to testify would be submitting a written statement in lieu of live testimony. Defendant argues that "[h]aving the witness's affidavit given to him[] immediately before the preliminary hearing, where he had virtually no opportunity to review the affidavit, denied Defendant his due process rights." Defendant claims that had he known the witness would not be present to testify at the hearing, he would have subpoenaed the witness.

¶27    Upon commencement of the hearing, defense counsel immediately moved the court for a continuance or bifurcation of the preliminary hearing with the expectation of subpoenaing the witness to testify later. The magistrate provisionally denied the motion but informed defense counsel that "[i]f at the end of the evidence [defense counsel] wants to make a motion for a continuance for the purpose of subpoenaing the witness, [the court would] hear the motion, and . . . address it at that point." However, defense counsel never renewed the motion for a continuance at the close of the preliminary hearing. Consequently, the State contends that Defendant has waived any claim that he was entitled to a continuance. We agree.

¶28    Rule 16 of the Utah Rules of Criminal Procedure provides several remedies to mitigate any prejudice to a criminal defendant caused by unanticipated testimony. *See* Utah R. Crim. P. 16(g). One such remedy is a continuance of the proceedings. *Id.* Yet "[w]hen the prosecution introduces unexpected testimony, a defendant essentially waive[s] his right to later claim error if the defendant

fails to request a continuance or seek other appropriate relief under Rule 16(g)." *State v. Rugebregt*, 965 P.2d 518, 522 (Utah Ct. App. 1998) (second alteration in original) (citation and internal quotation marks omitted). Here, Defendant effectively waived his right to raise this claim on appeal because, despite having requested a continuance at the commencement of the preliminary hearing, he failed to renew the motion as instructed by the magistrate. *See State v. Hansen*, 2002 UT 114, ¶ 16, 61 P.3d 1062 ("[W]hen a court properly defers ruling on an issue that has been raised and plainly instructs the objecting party to re-raise the issue at a specific later time if its objection remains, . . . [and] if no such later objection is made, the party has not presented [the issue] to the trial court in a manner sufficient to obtain a ruling thereon, thereby preserving the issue for review." (third alteration in original) (citations and internal quotation marks omitted)).

C.     The Magistrate's Decision To Admit the Written Statement In Lieu of Oral Testimony Did Not Violate Defendant's Constitutional Confrontation Rights.

¶29     Defendant also argues that his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution and under the Utah Constitution were violated when the magistrate admitted the witness's written statement at the preliminary hearing, thereby denying Defendant an opportunity to cross-examine that witness. Defendant argues that a preliminary hearing, as opposed to a probable cause determination at an arraignment, is a critical stage of a prosecution and thus entitles criminal defendants the right to confront and cross-examine all adverse witnesses.

¶30     The Utah Supreme Court has already addressed this precise issue in *State v. Timmerman*, 2009 UT 58, 218 P.3d 590. In that case, the state introduced at the preliminary hearing the written statement of a witness who was unavailable to testify because she invoked the spousal privilege. *Id.* ¶ 4. Over the defendant's objection, the magistrate admitted the witness's statement and

ultimately bound the defendant over for trial. *Id.* The defendant subsequently moved to quash the bindover on the same constitutional grounds as does Defendant in this case. *See id.* ¶ 5. The trial court denied the motion to quash, ruling that the confrontation rights afforded by both the United States and Utah constitutions do not apply to preliminary hearings. *Id.*

¶31    The Utah Supreme Court affirmed. *Id.* ¶¶ 13, 16 (holding "that the federal Confrontation Clause does not apply to preliminary hearings" and "that the plain language of the 1995 amendment to article I, section 12 of the Utah Constitution removed the constraints of Utah's Confrontation Clause from preliminary hearings"). Notably, the supreme court rejected the same arguments Defendant now advances in an attempt to distinguish between the probable cause determinations at arraignments and those at preliminary hearings and the corresponding level of confrontation rights. *See id.* ¶ 12. Because the *Timmerman* holding squarely addresses the factual and legal issues present in the case before this court, we determine that the magistrate properly admitted the witness statement in lieu of the witness's actual testimony.

¶32    Because all three grounds for Defendant's appeal on this point fail, we affirm the trial court's denial of his motion to quash bindover.

### IV. The Trial Court Properly Denied Defendant's Motion To Dismiss for Violation of the Rule Against Multiplicity.

¶33    Defendant argues that the trial court erred by denying his motion to dismiss the Third Amended Information because the counts charged violate the rule against multiplicity. The rule against multiplicity stems "from the 5th Amendment [Double Jeopardy Clause], which prohibits the Government from charging a single offense in several counts and is intended to prevent multiple punishments for the same act." *State v. Morrison*, 2001 UT 73, ¶ 24, 31 P.3d 547 (citation and internal quotation marks

omitted). "'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately . . . . If the latter, there can be but one penalty.'" *Blockburger v. United States*, 284 U.S. 299, 302 (1932) (omission in original) (quoting *Wharton's Criminal Law* § 34 n.3 (11th ed.)). Thus, evaluation of a multiplicity claim requires analysis of the statutes under which a criminal defendant is charged. *State v. Rasabout*, 2013 UT App 71, ¶¶ 16–17, 299 P.3d 625.

¶34    The Utah Legislature has instructed courts to construe the "laws of this state . . . according to the fair import of their terms to promote justice." Utah Code Ann. § 76-1-106 (LexisNexis 2012). In *State v. Morrison*, 2001 UT 73, 31 P.3d 547, the supreme court employed this approach as it evaluated a multiplicity challenge to the sexual exploitation of a minor statute. *See id.* ¶ 25. The court construed the statute to mean that "each individual 'visual representation' of child pornography that is knowingly possessed by a defendant constitutes the basis for a separate offense." *Id.* ¶ 26 (citing Utah Code Ann. § 76-5a-3 (1999) (current version at Utah Code Ann. § 76-5b-201 (LexisNexis 2012))). The court held that, "[t]herefore, the rule against multiplicity was not violated" when a defendant was charged with fifty separate counts. *Id.* ¶¶ 2, 26.

¶35    Here, Defendant was charged with multiple counts of rape of a child, sodomy on a child, and sexual abuse of a child. Examination of these statutes reveals that the legislature intended to criminalize each individual act and not "the course of action which they constitute." *See Blockburger*, 284 U.S. at 302 (citation and internal quotation marks omitted). When Defendant committed these offenses, Utah Code section 76-5-402.1 provided, "A person commits rape of a child when the person *has sexual intercourse with a child* who is under the age of 14." Utah Code Ann. § 76-5-402.1(1) (Michie Supp. 1996) (emphasis added). Section 76-5-403.1 provided,

> A person commits sodomy upon a child if the actor *engages in any sexual act* upon or with a child who is under the age of 14, involving the genitals or anus of

the actor or the child and the mouth or anus of either person, regardless of the sex of either participant.

*Id.* § 76-5-403.1(1) (emphasis added). And section 76-5-404.1 provided,

A person commits sexual abuse of a child if, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, *the actor touches* the anus, buttocks, or genitalia of any child, the breast of a female child younger than 14 years of age, *or otherwise takes indecent liberties with a child,* or *causes a child to take indecent liberties with the actor or another* with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

*Id.* § 76-5-404.1(1) (emphases added). Just as each visual representation of child pornography possessed by the defendant in *Morrison* constituted a separate offense, it is clear from the "fair import" of the above-cited statutes that the legislature intended to prohibit each individual act of rape, sodomy, or sexual abuse of a child. Accordingly, the State was free to charge multiple counts of the same crime so long as each count represented a separate act of rape, sodomy, or sexual abuse committed by Defendant. By doing so, the State did not violate the rule against multiplicity.

V. The Trial Court Properly Denied Defendant's Motion to Dismiss Claiming Constitutional and Rule Deficiencies.

¶36 Defendant also argues that the trial court erred in not dismissing the Third Amended Information on the grounds that the charging document violated his due process rights embodied in the Utah Constitution and rule 4 of the Utah Rules of Criminal Procedure. Specifically, Defendant contends that the original and

the four amended informations failed to provide adequate notice of the dates and locations of his then-alleged crimes, thereby "wreak[ing] havoc on Defendant's ability to defend himself."

¶37 The Utah Constitution provides that "[n]o person shall be deprived of life, liberty or property, without due process of law," Utah Const. art. 1, § 7, and that criminal defendants have the right "to demand the nature and cause of the accusation against [them]," and to be provided with a "copy thereof," *id.* § 12. Also, at the time the Third Amended Information was filed, rule 4 of the Utah Rules of Criminal Procedure provided in relevant part, "The court may permit an indictment or information to be amended at any time before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced." Utah R. Crim. P. 4(d) (2011).[4]

¶38 Under rule 4(d), "the trial court may allow an information to be amended if two conditions are met: (1) no additional or different offense is charged, and (2) the substantial rights of the defendant[] are not prejudiced." *State v. Bush*, 2001 UT App 10, ¶ 11, 47 P.3d 69 (alternation in original) (citation and internal quotation marks omitted). Defendant argues that the State has the burden of showing that both prongs of rule 4(d) are met before a court may allow for an amendment. However, in *Tillman v. Cook*,

_____

4. Rule 4 has since been amended, effective April 1, 2012. It now reads,

> The court may permit an information to be amended at any time before trial has commenced so long as the substantial rights of the defendant are not prejudiced. If an additional or different offense is charged, the defendant has the right to a preliminary hearing on that offense as provided under these rules and any continuance as necessary to meet the amendment.

Utah R. Crim. P. 4(d) (2013).

855 P.2d 211 (Utah 1993), the Utah Supreme Court held that even where new and additional offenses were charged with the amendment of a first degree murder charge to include aggravating circumstances, rule 4(d) was not violated because the defendant—not the State—"ha[d] shown no prejudice because of the amendment." *Id.* at 214–15. Also, in *State v. Holt*, 2004 UT App 213U (mem.), this court determined that even though the trial court erred when it allowed the state to amend an information at the end of a defendant's trial because the amendment created a new and additional offense, "it [was] clear that [the d]efendant did not suffer any harm or prejudice as a result." *Id.* at para. 9. Consequently, we declined to reverse the defendant's conviction in that case. *See id.*

¶39 Thus, rule 4(d) case law suggests that even if an amended information does create a new and additional offense, reversal is only appropriate if the defendant can demonstrate that his or her substantial rights are prejudiced as a result of the amendment. Here, whether or not the Third Amended Information charged Defendant with new and additional offenses is inconsequential to our resolution of this issue because Defendant has not established that his substantial rights were prejudiced by any new charges.

¶40 At the heart of Defendant's prejudice argument is his claim that the repeated amendments to the information hampered his defense and violated his due process rights by presenting him with "constantly moving targets in terms of dates, times, and events." Defendant's argument lacks merit. The supreme court has explained that due process does not "expressly mandate identification of the exact date when an alleged offense occurred." *State v. Taylor*, 2005 UT 40, ¶ 9, 116 P.3d 360. This is especially true of sexual abuse prosecutions where "identifying the specific date, time, or place of the offense is often difficult owing to the inability of young victims to provide this information." *Id.* ¶ 12. Rather, "due process requires that an accused be given *sufficiently* precise notification of the date of the alleged crime so that he can prepare his defense." *State v. Nelson-Waggoner*, 2004 UT 29, ¶ 20, 94 P.3d 186

(emphasis added) (citation and internal quotation marks omitted). The analysis requires "weighing of the completeness of the notice and its adequacy for the defendant's purposes against the background of the information *legitimately available to the prosecuting authority*." *Taylor*, 2005 UT 40, ¶ 9 (emphasis added) (citation and internal quotation marks omitted). The constitutional requirement is fulfilled "[a]s long as a defendant is sufficiently apprised of the State's evidence upon which the charge is based so that the defendant can prepare to meet that case." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶41     We determine that the State provided Defendant with adequate notice.

> [T]he notice to which a defendant is constitutionally entitled may come through one or all of three sources: the charging information, a response to a bill of particulars under rule 4(e) of the Utah Rules of Criminal Procedure, or a response, under section 77-14-1 of the [Utah] Code, to a demand for the place, date, and time of the offense charged.

*State v. Wilcox*, 808 P.2d 1028, 1031 (Utah 1991). The State provided Defendant with all three forms of notice in this instance. Defendant asserts that the bill of particulars and the section 77-14-1 demand response are insufficient because they do not correspond to the Fourth Amended Information, which became the final charging document. Though the State addressed a different charging document, the State's response to Defendant's section 77-14-1 demand provided Defendant with enough detail because the Fourth Amended Information neither added to nor substantively changed the counts set forth in the Third Amended Information. The Fourth Amended Information removed only the counts that had been previously severed or dismissed. In addition, although it appears that the bill of particulars corresponded only to the Second Amended Information, Defendant has not included a copy of the bill of particulars in the record on appeal. Accordingly, because we

cannot evaluate whether the bill of particulars was sufficient to address Defendant's specificity concerns, we must assume that the bill of particulars filed by the State was adequate. *See State v. Litherland*, 2000 UT 76, ¶ 11, 12 P.3d 92 ("If an appellant fails to provide an adequate record on appeal, [an appellate court] must assume the regularity of the proceedings below." (citation and internal quotation marks omitted)).

¶42    A review of both the Third Amended Information and the section 77-14-1 demand response confirms that the State gave Defendant "sufficiently precise notification," *see Nelson-Waggoner*, 2004 UT 29, ¶ 20 (citation and internal quotation marks omitted), in light of the "information legitimately available to the prosecuting authority," *Taylor*, 2005 UT 40, ¶ 9 (citation and internal quotation marks omitted). Examined together, these documents provide the years, names, and frequency with which Defendant was then alleged to have committed the crimes charged. The State obtained this information entirely from the victims' memories of events that had transpired more than a decade prior. It was the best information available to the prosecution.

¶43    Furthermore, Defendant was provided with the Third Amended Information on March 2, 2011. The preliminary hearing was held on June 21, 2011, and trial was not scheduled to begin until August 22, 2011. Thus, Defendant had more than three months from the time he was provided with the Third Amended Information to prepare for the preliminary hearing and an additional two months to prepare for trial. In other words, Defendant had ample time to prepare a defense both for the preliminary hearing and trial. *Cf. Tillman v. Cook*, 855 P.2d 211, 215–16 (Utah 1993) (explaining that no prejudice resulted where the defendant was bound over after the information was amended at the close of the preliminary hearing and where the defendant had more than three months after the amendment to prepare a defense for trial). Therefore, Defendant's rights were not substantially prejudiced.

¶44    In sum, we conclude that Defendant's due process rights under the Utah Constitution and rule 4(d) were not violated, because the State provided Defendant with adequate notice and he had ample time to prepare a defense. Thus, we affirm the trial court's ruling denying Defendant's motion to dismiss for constitutional and rule deficiencies.[5]

### VI. Defendant's Claim That No Exigent Circumstances Justified His Warrantless Arrest Inside His Home Is Unpreserved.

¶45    Finally, Defendant contends that there were no exigent circumstances justifying his warrantless arrest inside his home. *See generally Payton v. New York*, 445 U.S. 573, 583 (1980) (holding that the Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a private residence in order to arrest a suspect unless exigent circumstances exist). Defendant concedes that he did not preserve this issue for appeal because it was not presented to the trial court. *See State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal."). Nevertheless, Defendant argues that we should address his warrantless arrest claim under the

---

5. Defendant also claims that the lack of specific dates and times for the offenses charged in the Third Amended Information prevented him from preparing an adequate alibi defense. However, the language of the statutes does not impose on the State an obligation to prove precise dates, even when Defendant has concerns about establishing an alibi defense. In other words, dates are not elements of the crimes charged against Defendant. *See State v. Fulton*, 742 P.2d 1208, 1213 (Utah 1987) ("[A]n alibi defense challenges the State's ability to prove the statutory elements. Therefore, the mere assertion of an alibi defense does not impose on the prosecution the additional burden of proving the precise date of the act. The burden on the prosecution remains the same, i.e., to establish all elements of the crime beyond a reasonable doubt." (footnote omitted)).

exceptional circumstances exception to the preservation rule. "The exceptional circumstances doctrine is used sparingly, properly reserved for truly exceptional situations, for cases . . . involving rare procedural anomalies, and [may be employed] where a change in law or the settled interpretation of law color[s] the failure to have raised an issue at trial." *Provo City v. Ivie*, 2008 UT App 287, ¶ 6, 191 P.3d 841 (alterations and omission in original) (citations and internal quotation marks omitted).

¶46    Defendant has not identified how this case constitutes a "rare procedural anomal[y]." *See id.* Nor has he demonstrated how an intervening "change in law or the settled interpretation of law" justifies his failure to raise the warrantless arrest claim below. *See id.* (citation and internal quotation marks omitted). Thus, the exceptional circumstances exception does not apply, and we decline to address Defendant's unpreserved claim on appeal. Additionally, Defendant's plea agreement limits the issues he may raise on appeal to those "which have arisen or been litigated in this case." Defendant's failure to raise or litigate this issue below also precludes him from arguing it on appeal.

CONCLUSION

¶47    Defendant has not shown error in the trial court's denial of his motions and Defendant failed to preserve his warrantless arrest claim. Accordingly, we affirm.

————