2013 UT App 5

# THE UTAH COURT OF APPEALS

STATE OF UTAH,

*Plaintiff and Appellee,*

*v.*

JEFF LAMB,

*Defendant and Appellant.*

Memorandum Decision
No. 20111071-CA
Filed January 10, 2013

Sixth District, Manti Department
The Honorable Wallace A. Lee
No. 101600091

Douglas L. Neeley, Attorney for Appellant
John E. Swallow and John J. Nielsen, Attorneys for Appellee

JUDGE CAROLYN B. MCHUGH authored this
Memorandum Decision,
in which JUDGES GREGORY K. ORME and
MICHELE M. CHRISTIANSEN concurred.

McHUGH, Judge:

¶1    Jeff Lamb appeals from his conviction for cattle rustling, specifically three counts of theft of lost property, third degree felonies. *See* Utah Code Ann. § 76-6-407 (LexisNexis 2012) (elements); *id.* § 76-6-412(b) (2012) (penalties). Lamb claims that the trial court erred in denying his motion to sever the charges and in denying his motion to suppress evidence obtained during a search of his property. We affirm.

¶2      In late March 2010, a Utah Department of Agriculture Theft Inspector was notified of potential cattle rustling in Ephraim, Utah.[1] As a result, the Theft Inspector and a State Brand Inspector went to investigate. After arriving at a neighbor's property, the Brand Inspector used a pair of binoculars to view cattle that were on Lamb's field.[2] The Brand Inspector determined that one of the calves in the field did not have Lamb's ownership markings but instead bore those of another cattle rancher.

¶3      The inspectors then entered Lamb's field and confirmed that the calf did not belong to Lamb. At that time, the inspectors discovered two other cows with ownership markings indicating that they belonged to a second cattle rancher. Several weeks later, the Theft Inspector discovered that an additional lost cow bearing the brand of yet another rancher was in Lamb's herd and that Lamb had put his own ear tag on the cow.

¶4      On several occasions, the Theft Inspector spoke with Lamb and inquired as to how the cattle ended up on his property. Lamb gave the Theft Inspector several inconsistent reasons why the cattle from three separate owners were on his property but conceded that they belonged to other owners. Though Lamb told one of the other

---

1.  "We state the facts in a light most favorable to the trial court's ruling denying [a] motion to suppress." *State v. Marquez*, 2007 UT App 170, ¶ 2, 163 P.3d 687 (alteration in original) (citation and internal quotation marks omitted).

2.  Lamb argues that the trial court made an erroneous finding of fact when it accepted the Theft Inspector's claim that he viewed the cattle through binoculars from a neighbor's property. Because we determine that a physical intrusion onto an open field is of no Fourth Amendment significance, *see infra* ¶¶16–17, any dispute as to whether the Theft Inspector actually entered the field to confirm that the cattle did not belong to Lamb has no bearing on whether the State violated his Fourth Amendment rights.

owners that he knew nothing about where the owner's lost cattle were, he later admitted to the Theft Inspector that he knew some of that owner's cattle were in his herd.

¶5     The State charged Lamb with three counts of theft of lost property. Lamb filed a motion to sever the counts and a motion to suppress the discovery of the stolen cattle by the inspectors' search of his field. After hearing arguments, the trial court denied both motions, ruling that the counts were properly joined because there was a common plan or scheme and Lamb would not be prejudiced by joinder, and because the field that the inspectors searched was an open field undeserving of Fourth Amendment protection. Lamb subsequently pled guilty on condition that he could appeal the trial court's suppression and severance rulings. *See generally State v. Sery*, 758 P.2d 935, 938 (Utah Ct. App. 1988). Lamb filed a timely notice of appeal.

¶6     First, we review Lamb's argument that the trial court abused its discretion when it denied Lamb's motion to sever the counts against him.

> [T]he grant or denial of severance is a matter within the discretion of the trial judge, so we reverse [a denial] only if the trial judge's refusal to sever charges is a clear abuse of discretion in that it sacrifices the defendant's right to a fundamentally fair trial. Under [the abuse of discretion] standard, we will not reverse . . . unless the decision exceeds the limits of reasonability.

*State v. Balfour*, 2008 UT App 410, ¶ 10, 198 P.3d 471 (alterations and omission in original) (citations and internal quotation marks omitted). We analyze a severance claim in two steps. "We must first determine whether the offenses were properly joined. We must then determine whether the offenses should nonetheless have

been severed due to any prejudice that may have resulted by their joinder." *State v. Burke*, 2011 UT App 168, ¶ 19, 256 P.3d 1102.

¶7     Joinder of offenses is permitted if certain criteria are met. Specifically,

> (1) Two or more felonies . . . may be charged in the same indictment or information if each offense is a separate count and if the offenses charged are:
>
> > (a) based on the same conduct or are otherwise connected [together[3]] in their commission; or
> >
> > (b) alleged to have been part of a common scheme or plan.
>
> . . . .
>
> (4)(a) If the court finds a defendant or the prosecution is prejudiced by a joinder of offenses . . . the court shall order an election of separate trials of separate counts, grant a severance of defendants, or provide other relief as justice requires.

---

3.  The previous publication of the Utah Code contains the word "together" as indicated in the quoted language. *See* Utah Code Ann. § 77-8a-1 (LexisNexis 2008). Although this word is not included in the most recent publication of the Utah Code, *see id.* (2012), this omission appears to be inadvertent because the statute has not been amended since the previous publication, *see id.* history.

Utah Code Ann. § 77-8a-1 (LexisNexis 2012). "The purpose of [Utah Code section 77-8a-1] is to allow joinder of offenses and thus eliminate multiple prosecutions in the interest of efficiency and economy of time and effort when the interests of justice can best be served thereby." *Balfour*, 2008 UT App 410, ¶ 31 (alteration in original) (citation and internal quotation marks omitted). "[T]o be classified as a common plan or scheme it is not necessary for the crimes to have been perpetrated in an absolutely identical manner, so long as the court perceives a visual connection between the two crimes." *Id*. ¶ 20 (alteration in original) (citation and internal quotation marks omitted). "This court has interpreted the phrase 'common scheme or plan' to apply when the crimes involve a similar fact pattern and proximity in time." *Id*. (quoting *State v. Lee*, 831 P.2d 114, 117–18 (Utah Ct. App. 1992)). Additionally, "the facts and the timing of the incidents should be considered in their totality, that is, factual similarities should be viewed in light of their temporal proximity to one another." *State v. Hildreth*, 2010 UT App 209, ¶ 34, 238 P.3d 444; *accord Lee*, 831 P.2d at 118 ("The striking similarities . . . in each incident, *coupled with* the proximity in time of the offenses, supplied a sufficient basis for the trial court to conclude that the crimes were alleged to have been part of a common scheme or plan . . . ." (citation and internal quotation marks omitted)).

¶8    First, the amended information charged Lamb with three separate counts of theft of lost property. "Therefore, the initial inquiry of section 77-8a-1(1), requiring that each offense constitute a separate count," is met. *See Balfour*, 2008 UT App 410, ¶ 19 (citing Utah Code Ann. § 77-8a-1(1) (LexisNexis 2003) (current version at *id*. (2012)).

¶9    In considering whether there was a common scheme or plan, the trial court recognized that "there were differences between the different Counts such as different owners, different kinds of [cattle], different days when the animals came to be in Mr. Lamb's possession," and that "the [cattle] were taken from different locations." However, the trial court also found "a lot of similari-

ties," including "that the cattle ended up in Mr. Lamb's possession . . . either because they became part of his herd as he was driving them from summer range to winter areas, or [because] they were hauled down from the summer range to the winter range"; that "they were kept in his possession, all of them, for . . . an unusually long period of time"; "that the cattle were all there when they were discovered by the Brand Inspector"; "that Mr. Lamb apparently [came] up with two different stories to explain why the cattle were there in almost every case"; and "that the cattle were branded by someone else's brand in every case." Additionally, the trial court found that Lamb "had the cattle in his possession for in some cases over a year—all of the cattle for several months, without taking reasonable measures to return them to their owner[s], which he obviously knew were not his." Based on that finding, the trial court determined "that the crime was committed in this case when Mr. Lamb retained the cattle for an unreasonable amount of time without taking reasonable measures to return the cattle to their owners."[4] Thus, the trial court ultimately ruled that "the charges are sufficiently similar to conclude that there was a common plan or scheme."

¶10    Although Lamb's acts of cattle rustling were not "perpetrated in an absolutely identical manner," the trial court clearly "perceive[d] a visual connection between the [three] crimes." *Balfour*, 2008 UT App 410, ¶ 20 (citations and internal quotation marks omitted). The offenses all involved stray cattle, which were all taken from other cattlemen during seasonal cattle drives or round-ups, and which were all found in Lamb's possession after a long period of time and without him having taken any reasonable measures to return them to their owners. Because the trial court did not "exceed[] the limits of reasonability," it did not exceed its

---

4. Lamb does not challenge the trial court's interpretation of Utah Code section 76-6-407 in determining when Lamb actually committed the crime of theft of lost property. *See generally* Utah Code Ann. § 76-6-407 (LexisNexis 2012).

discretion in determining that the separate charges were part of a common scheme or plan. *See id.* ¶ 10 (citation and internal quotation marks omitted).

¶11 Lamb also argues that he was prejudiced by the joinder because, in separate trials, the evidence of the "other acts" allegations of cattle rustling would have been inadmissible because the probative value would have been outweighed by the danger of unfair prejudice. The State argues that Lamb has failed to adequately brief the prejudice prong of his severance claim. "It is well established that a reviewing court will not address arguments that are not adequately briefed." *State v. Thomas*, 961 P.2d 299, 304 (Utah 1998). The Utah Rules of Appellate Procedure specify that briefs must contain "the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). "'An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court.'" *State v. Turner*, 2012 UT App 189, ¶ 29, 283 P.3d 527 (quoting *Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14).

¶12 Here, Lamb's argument provides only a single case citation, offers only conclusory statements, and does not provide any analysis of rule 404(b) or the *Shickles* factors that are utilized in evaluating the evidence's potential unfair prejudice under the rule. *See generally* Utah R. Evid. 403; *id.* R. 404(b); *State v. Balfour*, 2008 UT App 410, ¶ 25, 198 P.3d 471 (citing *State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988)). Because we determine that Lamb has inadequately briefed the prejudice prong of the severance analysis, we do not consider it. *See Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 ("An appellate court is not a depository in which [a party] may dump the burden of argument and research." (alteration in original) (citation and internal quotation marks omitted)).

¶13 Next, we consider whether the trial court's denial of Lamb's motion to suppress was proper and whether factual findings made

during the suppression hearing were clearly erroneous. *See State v. Earl*, 2004 UT App 163, ¶ 8, 92 P.3d 167 ("When reviewing a trial court's suppression order, we review its factual findings for clear error, and its legal conclusions for correctness.").

¶14   Lamb first contends that Utah Code section 4-24-28, the statute under which the evidence was obtained, violates Fourth Amendment restrictions on warrantless administrative searches. *See* Utah Code Ann. § 4-24-28 (LexisNexis 2006) (allowing inspectors to stop livestock vehicles and to enter premises where livestock are kept to inspect brands). Lamb also argues that the trial court made erroneous findings of fact by accepting the Theft Inspector's testimony indicating that he first saw the cattle when using binoculars while on a neighbor's property. Lamb's arguments are premised on the assumption that the Theft Inspector entered his field without a warrant to determine that the cattle were stolen. He contends that this entry onto his property was an illegal search prohibited by the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.[5]

¶15   The State does not directly address these arguments, instead contending that, regardless of the statutory authority for an administrative search and any dispute over where the Theft Inspector was when he first saw a cow bearing the identification of another owner, the Fourth Amendment does not apply to the open field where the cattle were found.

¶16   We agree that the Fourth Amendment does not protect "open fields." *See Hester v. United States*, 265 U.S. 57, 59 (1924) ("[T]he special protection accorded by the Fourth Amendment to

---

5. The Fourth Amendment is applicable to the states pursuant to the Fourteenth Amendment. *See generally In re A.R.*, 937 P.2d 1037, 1040 (Utah Ct. App. 1997).

the people in their 'persons, houses, papers, and effects,' is not extended to the open fields."); *see also Braden v. County of Lake*, No. 00-15529, 25 Fed. App'x 513, 514 (9th Cir. Nov. 21, 2001) (holding that property surrounded by barbed wire fence "to keep out trespassers or control cattle" was an open field and not part of curtilage); *United States v. Caldwell*, No. 99-6031, 2000 WL 1888682, at *7 (6th Cir. Dec. 19, 2000) (holding that a fenced cattle pasture thirty to sixty yards from a house was an open field and not part of the curtilage); *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1253 (D. Kan. 2004) (ruling that a cattle pasture was an open field); *State v. Shreve*, 667 P.2d 590, 591 (Utah 1983) (per curiam) (determining that the defendant had no reasonable expectation of privacy when growing marijuana in an open field in a rural area with no houses nearby); *Westfall v. State*, 10 S.W.3d 85, 90 (Tex. App. 1999) (holding that a fenced cattle field and barn on which no residence is maintained is an open field for Fourth Amendment purposes). An "open field" need not actually even be "open" or a "field." *See Oliver v. United States*, 466 U.S. 170, 180 n.11 (1984). So long as it is not part of the curtilage of a home, an "open field" can be a secluded field surrounded by woods, fences, chicken wire, or embankments, and entirely out of public view or access, *see id.* at 174, 180 n.11, 182 & n.12; it can even be a cave, a still, a shed, a small concrete building, a chicken coop, a hog pen, a goose pen, *see United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292, 1296–97 (7th Cir. 1976), or an open and shared parking area adjacent to or behind an apartment building, *see State v. Atwood*, 831 P.2d 1056, 1059 (Utah Ct. App. 1992). As the State persuasively argues in its brief, "[w]hatever 'open field' means, the phrase surely applies to a field that is out in the open."

¶17    Even if it constituted a trespass, the State's physical intrusion on an open field is of no Fourth Amendment significance. *See United States v. Jones*, 132 S. Ct. 945, 953 (2012) ("Quite simply, an open field, unlike the curtilage of a home, is not one of those protected areas enumerated in the Fourth Amendment." (citation omitted)); *see also Casey v. State*, 488 P.2d 546, 547–48 (Nev. 1971) (citing cases demonstrating that open fields remain unprotected

under the Fourth Amendment, even when fenced, or posted with "no trespassing" signs, and regardless of plain view). Accordingly, any authorization that section 4-24-28 gives to search an open field does not raise constitutional concerns.

¶18   Lamb does not argue that the property where the stolen cattle were found was something other than an open field. As a result, the trial court correctly concluded that "there was not a search in this case proscribed by the Fourth Amendment because . . . the acts of the brand inspectors occurred in an open field where [Lamb] had no reasonable expectation of privacy." Thus, the trial court properly denied Lamb's motion to suppress.

¶19   Affirmed.

_____