2013 UT App 187

## THE UTAH COURT OF APPEALS

DORI WINTLE-BUTTS,
Petitioner,
*v.*
CAREER SERVICE REVIEW OFFICE AND DEPARTMENT OF
TECHNOLOGY SERVICES,
Respondents.

Opinion
No. 20110574-CA
Filed July 26, 2013

Original Proceeding in this Court

Grant W.P. Morrison and Court J. Klekas II,
Attorneys for Petitioner
John E. Swallow and Stanford E. Purser, Attorneys
for Respondent Department of Technology
Services

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES JAMES Z. DAVIS and CAROLYN B. MCHUGH
concurred.

CHRISTIANSEN, Judge:

¶1     Petitioner Dori Wintle-Butts seeks review of the Career
Service Review Office (CSRO) Administrator's (the Administrator)
determination that CSRO lacked jurisdiction to consider Wintle-
Butts's employment grievance. We approve the Administrator's
decision.

BACKGROUND

¶2     Wintle-Butts has been an employee of the Department of Human Services (DHS) since 1983. On September 20, 2010, Wintle-Butts transferred from her position with DHS to a position with the Department of Technology Services (DTS) with a corresponding increase in pay from $40.40 to $46.27 per hour. As with all new hires to DTS, Wintle-Butts's employment offer was conditioned upon successful completion of a criminal background check.

¶3     On September 23, 2010, Wintle-Butts received a letter from her supervisor at DTS indicating that she had failed to pass the required background check and was being placed on paid administrative leave until a final decision could be made regarding the status of her employment. Five days later, Wintle-Butts signed a letter entitled "Request for Transfer," in which she requested transfer from her position with DTS to her former position with DHS, which became effective that same day. By signing the transfer request, Wintle-Butts specifically agreed to "waive any and all right [she] might have to grieve the transfer or the decrease in salary."

¶4     On October 5, 2010, consistent with the grievance process for career service employees, *see generally* Utah Code Ann. § 67-19a-402 (LexisNexis 2011), Wintle-Butts filed with DTS a grievance challenging her "[w]rongful dismissal on September 28, 2010, of [her] conditional employment under the provisions of the DTS Policy and Procedure 2000-0014 Background Investigations." Wintle-Butts's former supervisor at DTS reviewed her grievance and determined that he was "not authorized" to reverse the DTS employment decision.[1] On October 14, Wintle-Butts advanced her grievance to the Executive Director of DTS (Director), who denied

---

[1]It is unclear from the record if or when Wintle-Butts received the denial of her grievance at this stage. However, because Wintle-Butts was entitled under the grievance process to advance her grievance after receipt of the denial, or after five working days had passed without a response, our analysis is not affected.

her grievance, explaining that Wintle-Butts was "not eligible . . . to use the grievance procedures." In addition, the Director noted that any claim of procedural error was moot because Wintle-Butts was "not qualified for the IT Analyst III position because [the Bureau of Criminal Identification] denied [her] the access necessary to do the job."

¶5     Wintle-Butts then advanced her grievance to CSRO, and a prehearing conference was scheduled before the Administrator on December 1, 2010. At the conference, the Administrator elected to schedule a formal hearing to determine if CSRO had authority to review Wintle-Butts's grievance. *See id.* § 67-19a-202 (setting forth the scope of authority of CSRO). In advance of the formal hearing, Wintle-Butts filed a Verified Request For Finding Of Jurisdiction By Administrator, arguing that because she was a career service employee, CSRO had jurisdiction over her grievance. DTS filed a motion to dismiss, asserting that because Wintle-Butts was "transferred" from her position at DTS back to a position with DHS, her alleged grievance did not fall within any of the statutory categories over which CSRO has jurisdiction pursuant to Utah Code section 67-19a-202. In her response to DTS's motion to dismiss, Wintle-Butts argued that her placement on paid administrative leave constituted a dismissal by DTS, thereby giving CSRO jurisdiction over her grievance.

¶6     At the hearing, Wintle-Butts argued that she was dismissed from DTS or, alternatively, that she was demoted or suspended. Wintle-Butts also argued that her transfer back to DHS was not voluntary because the request was signed under circumstances of duress or coercion as a result of her dismissal. On June 7, 2011, the Administrator issued his decision, concluding that because Wintle-Butts was "transferred" from her position at DTS back to a position with DHS, her grievance did not fall within any of the categories set forth in Utah Code section 67-19a-202 over which CSRO has jurisdiction. The Administrator also concluded that Wintle-Butts was not under duress and was not coerced when she signed the

request for transfer. Wintle-Butts seeks judicial review of the Administrator's final decision.

ISSUE AND STANDARD OF REVIEW

¶7 Wintle-Butts argues that the Administrator erred when he determined that CSRO did not have jurisdiction over her grievance. The determination whether a personnel matter falls within CSRO's jurisdiction requires interpretation or application of a statute. *See* Utah Code Ann. § 67-19a-202. Thus, we may grant relief only if "the agency has erroneously interpreted or applied the law." *Id.* § 63G-4-403(4)(d). Because review under subsection (4)(d) does not "imply a specific standard of review," we are "free to apply our traditional approach in selecting the appropriate standard of review" based on "whether the [agency]'s decision qualifies as a finding of fact, a conclusion of law, or a determination of a mixed question of law and fact." *See Murray v. Labor Comm'n*, 2013 UT 38, ¶¶ 23–24. "The issue of whether an agency has jurisdiction is a question of law, which we review for correctness." *Mendoza v. Labor Comm'n*, 2007 UT App 186, ¶ 5, 164 P.3d 447 (citing *Stokes v. Flanders*, 970 P.2d 1260, 1262 (Utah 1998)).[2]

ANALYSIS

I. This Court Has Jurisdiction To Review the
Administrator's Decision.

¶8 "[A]s a threshold matter, we must first determine whether this court has subject matter jurisdiction to [review] the [agency

---

[2]Because our analysis of CSRO's jurisdiction is dispositive, we need not reach the question of whether Wintle-Butts's request for transfer was valid and we do not review the Administrator's decision on that issue.

action]." *Pleasant Grove City v. Orvis*, 2007 UT App 74, ¶ 4, 157 P.3d 355. The Utah Administrative Procedures Act provides for judicial review by this court or the Utah Supreme Court of agency actions resulting from formal adjudicative proceedings. Utah Code Ann. § 63G-4-403(1) (LexisNexis 2011).

¶9 Here, the Administrator designated the hearing on CSRO's jurisdiction over Wintle-Butts's claim as a formal proceeding. The parties were afforded the opportunity to conduct limited discovery, file responsive pleadings, and argue their cross-motions. *See id.* §§ 63G-4-204 to -206. Following the hearing, the Administrator entered findings of fact and a decision dismissing Wintle-Butts's grievance for lack of jurisdiction. *See id.* § 63G-4-208. Wintle-Butts then timely filed a petition for review within thirty days after the Administrator issued his decision. *See* Utah R. App. P. 14(a). We have little difficulty concluding that this proceeding satisfied the requirements of a formal adjudicative proceeding, and we therefore have jurisdiction to review the Administrator's decision. *See* Utah Code Ann. § 63G-4-403(1).

## II. The Administrator Correctly Determined that CSRO Does Not Have Jurisdiction To Review Wintle-Butts's Grievance.

¶10 Wintle-Butts argues that the Administrator erred in determining that CSRO did not have jurisdiction over her grievance against DTS. CSRO is an independent appellate forum "established to provide state civil service employees with a tribunal for appealing personnel decisions outside of the agency for which they work." *Olson v. Utah Dep't of Health*, 2009 UT App 303, ¶ 8, 221 P.3d 863. It is the final administrative body to which a career service employee's grievance regarding certain employment issues may be advanced for review. Utah Code Ann. § 67-19a-202(1)(a) (LexisNexis 2011). *See generally id.* § 67-19a-402 (setting forth the grievance procedure for career service employees). Once a grievance is advanced to CSRO, the Administrator must make an initial determination of "(i) whether the employee is a career service employee and is entitled to use the grievance system; (ii) whether

the office has authority to review the grievance; and (iii) whether the employee has been directly harmed." Utah Code Ann. § 67-19a-403(2)(a).

¶11 The parties both accept, and we agree, that upon her transfer to DTS, Wintle-Butts remained a career service employee by operation of Utah Code section 63F-1-106(4)(a).[3] However, while career service status is a necessary element of CSRO jurisdiction, it is not sufficient alone to establish CSRO's jurisdiction over an employee's grievance.

¶12 The scope of CSRO's authority to review grievances is strictly limited to the personnel matters enumerated in Utah Code section 67-19a-202(1)(a). *Id.* § 67-19a-202(1)(b) ("The office may not review or take action on . . . a personnel matter not listed in Subsection (1)(a) . . . ."). CSRO may therefore review only grievances founded upon

(i) a dismissal;
(ii) a demotion;
(iii) a suspension;
(iv) a reduction in force;
(v) a dispute concerning abandonment of position;

---

[3]Section 63F-1-106(4)(a) provides,

An employee of an executive branch agency who was a career service employee as of July 1, 2005 who is transferred to [DTS] continues in the employee's career service status during the employee's service to [DTS] if the duties of the position in the new department are substantially similar to those in the employee's previous position.

Utah Code Ann. § 63F-1-106(4)(a) (LexisNexis 2011). The parties agree that Wintle-Butts's duties in her position at DTS were to be substantially similar to her duties at DHS.

(vi) a wage grievance if an employee is not placed within the salary range of the employee's current position;
(vii) a violation of a rule adopted under Chapter 19, Utah State Personnel Management Act; or
(viii) [the equitable administration of certain benefits].

*Id.* § 67-19a-202(1)(a). Because CSRO is a tribunal of limited subject matter jurisdiction, Wintle-Butts bore the burden of "present[ing] sufficient facts to invoke the limited jurisdiction of [CSRO]." *See Olson*, 2009 UT App 303, ¶ 13 (citation and internal quotation marks omitted). Wintle-Butts now argues that CSRO has jurisdiction because she was either demoted or dismissed by DTS, or because DTS violated a rule guaranteeing to her certain procedural rights.

## A. Wintle-Butts Was Not Demoted by DTS.

¶13 Wintle-Butts first argues that she was demoted by DTS and that CSRO therefore had jurisdiction to hear her grievance.[4] Both

---

[4]DTS argues that Wintle-Butts failed to sufficiently raise the issue of "demotion" before CSRO and therefore the argument was not properly preserved for review by this court. Wintle-Butts argues that preservation in this case is governed by a less stringent "level of consciousness" standard, which she satisfied. We do not agree with Wintle-Butts that the "level of consciousness" standard is applicable to formal administrative proceedings. *See Badger v. Brooklyn Canal Co.*, 966 P.2d 844, 847 (Utah 1998) (applying "level of consciousness" standard to an informal hearing before the state engineer). Rather, to preserve an issue for judicial review it must be "'raised in a timely fashion'" before the agency, and be "'specifically raised'" with "'supporting evidence or relevant legal authority.'" *See Dinger v. Department of Workforce Servs.*, 2013 UT App 59, ¶ 28, 300 P.3d 313 (quoting *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801) (holding that the preservation rule is applicable to review of agency decisions "when the issue raised on appeal

(continued...)

Utah Code section 67-19-3(7)(a) and Utah Administrative Code R477-1-1(31) define demotion as a "disciplinary action resulting in a reduction of an employee's current actual wage." *See* Utah Code Ann. § 67-19-3(7)(a) (LexisNexis 2011); Utah Admin. Code R477-1-1(31).[5]

1.  Wintle-Butts's Transfer Back to DHS Was Not a Disciplinary Action Taken by Management Under Utah Administrative Code R477-11.

¶14  To arrive at her argument that she was demoted by DTS, Wintle-Butts conflates DTS's action in placing her on administrative leave with her subsequent voluntary transfer back to DHS. Demotion, however, is premised on a "disciplinary action" that is "taken by management under Rule R477-11." Utah Admin. Code R477-1-1(31), (36). As the Administrator correctly observed, a transfer is "[a]n action not mandated by management moving an employee from one job or position to another job or position with an equal or lesser salary range maximum for which the employee qualifies," and such a transfer "may include a decrease in actual wage." *Id.* R477-1-1(99).

---

[4](...continued)
could have been resolved in the administrative setting" (citation and internal quotation marks omitted)). Nonetheless, with respect to her demotion argument, we conclude that Wintle-Butts sufficiently raised this issue before the Administrator so that CSRO had an opportunity to rule on the issue. *See Columbia HCA v. Labor Comm'n*, 2011 UT App 210, ¶ 6, 258 P.2d 640 (mem.).

[5]Throughout this opinion we cite the 2010 version of the Utah Administrative Code, which was in effect at the time Wintle-Butts was placed on paid administrative leave and during the course of the subsequent grievance proceedings.

¶15   We agree with the Administrator that Wintle-Butts's transfer back to DHS fits squarely within the agency's definition of a transfer and was not a disciplinary action taken by DTS under R477-11.[6] *See id.* R477-1-1(36). Indeed, Wintle-Butts's request to transfer back to DHS was not in any sense an action "taken by management" and therefore cannot be the basis for a demotion. *See id.* R477-1-1(31), (36). Wintle-Butts also repeatedly argued to the Administrator that she was not grieving her transfer back to DHS, but was grieving only what she then characterized as her dismissal from DTS. For purposes of Wintle-Butts's demotion argument, we therefore consider only the action taken by DTS—placement of Wintle-Butts on paid administrative leave.

2.     DTS's Placement of Wintle-Butts on Paid Administrative Leave Was Not a Disciplinary Action.

¶16   Wintle-Butts contends that DTS's action in placing her on administrative leave when she failed her background check was disciplinary because the action was taken when she no longer met the requirements of her position. *See* Utah Admin. Code R477-11-1(1) ("Agency management may discipline any employee for . . . no longer meet[ing] the requirements of the position . . . ."). Indeed, disciplinary action is defined as "[a]ction taken by management under Rule R477-11." *Id.* R477-1-1(36). However, placement on paid administrative leave is not one of the disciplinary actions provided for in R477-11, but rather administrative leave is governed by R477-7-7. *Compare id.* R477-11-1(4)(a)–(d) (providing for disciplinary action by reprimand,

---

[6]Wintle-Butts also challenges the Administrator's determination that her request for transfer back to DHS was freely signed and not coerced. Even if we were to determine that Wintle-Butts's transfer was coerced, it would not affect our conclusion that her transfer was not a demotion within the regulatory definition and does not otherwise serve as a basis for CSRO to exercise jurisdiction over Wintle-Butts's grievance. *See* Utah Code Ann. § 67-19a-202(1) (LexisNexis 2011).

suspension without pay, demotion, or dismissal), *with id.* R477-7-7(1), (1)(a)(iv), (1)(b)(v) (providing for paid administrative leave for reasons "consistent with agency policy"). Moreover, in his letter placing Wintle-Butts on paid administrative leave, Wintle-Butts's supervisor specifically explained, "This leave is in accordance with [rule] R477-7-7."

¶17 Wintle-Butts argues that the denial letter from the Director proves that DTS's actions were disciplinary because the letter refers to R477-11 and states that Wintle-Butts "no longer meet[s] the requirements of the position." We do not agree that the letter conclusively demonstrates that Wintle-Butts was subject to disciplinary action. Rather, the letter explains the Director's view that any procedural errors in the handling of Wintle-Butts's conditional employment with DTS were moot because Wintle-Butts "no longer [met] the requirements of the position" under R477-11. However, this recognition by the Director that Wintle-Butts *could have* been disciplined under R477-11 does not demonstrate that she *was* disciplined. *See* Utah Admin. Code R477-11-1(1) ("Agency management *may* discipline any employee for . . . no longer meet[ing] the requirements of the position . . . ." (emphasis added)). Rather, Wintle-Butts's supervisor indicated that Wintle-Butts was placed on leave in accordance with R477-7-7 and made no mention of disciplinary action or R477-11. Because the evidence Wintle-Butts has advanced does not demonstrate otherwise, we conclude that her placement on administrative leave was not an action taken by management under R477-11. Accordingly, Wintle-Butts has failed to demonstrate that she was subject to a "disciplinary action" within the meaning of Utah Administrative Code R477-1-1(36).

3. DTS's Placement of Wintle-Butts on Paid Administrative Leave Did Not Result in a Reduction of Her Current Actual Wage.

¶18 The record also shows that DTS's placement of Wintle-Butts on paid administrative leave did not result "in a reduction of [Wintle-Butts]'s current actual wage." *See id.* R477-1-1(31). Wintle-

Butts's hourly rate was increased to $46.27 on September 20, 2010, when she transferred to DTS. Her hourly rate was not reduced until September 28, 2010, when she transferred back to DHS. It does not appear from the record that DTS's placement of Wintle-Butts on paid administrative leave on September 23, 2010, had any effect on her then-current actual wage, and she has introduced no evidence to the contrary. Thus, Wintle-Butts cannot demonstrate that DTS's actions resulted in a reduction of her then-current actual wage.

¶19 Because Wintle-Butts has not demonstrated either that she was subject to disciplinary action or that such action resulted in a reduction in her current actual wage, we conclude that Wintle-Butts was not demoted when DTS placed her on paid administrative leave. Thus, the Administrator did not err in determining that Wintle-Butts was not demoted, and that CSRO did not have jurisdiction over Wintle-Butts's grievance on this basis.

B.     Wintle-Butts Did Not Adequately Brief Her Dismissal Argument.

¶20 Wintle-Butts next argues that CSRO has jurisdiction over her grievance because she was dismissed by DTS. However, Wintle-Butts fails to develop this argument beyond bare assertions that her employment with DTS "ceased to exist" when she was placed on administrative leave and that she was thereby separated from state employment. Wintle-Butts does not address the relevant administrative definition of dismissal or the Administrator's determination that she was never separated from state employment. As DTS correctly points out, Wintle-Butts has failed to adequately brief this issue, and we therefore do not consider it further.[7] *See* Utah R. App. P. 24(a)(9) (listing requirements for

---

[7]Wintle-Butts's brief includes the heading, "Whether Grievant was suspended or dismissed." However, Wintle-Butts never argues that she was suspended in her briefs to this court. To the extent she has raised suspension as a ground for CSRO's

(continued...)

arguments in an appellant's briefs); *State v. Lamb*, 2013 UT App 5, ¶ 11, 294 P.3d 639 ("'It is well established that a reviewing court will not address arguments that are not adequately briefed.'" (quoting *State v. Thomas*, 961 P.2d 299, 304 (Utah 1998))).

C.     Wintle-Butts Failed to Preserve Her Rules Violation Argument Before CSRO.

¶21     Wintle-Butts also argues that CSRO has jurisdiction over her grievance because DTS violated its own rules by failing to afford her due process and an opportunity to respond to DTS's proposed action regarding her employment. *See* Utah Code Ann. § 67-19a-202(1)(a)(vii) (LexisNexis 2011); Utah Admin. Code R477-11-1(3) ("All disciplinary actions of career service employees shall be governed by principles of due process and Title 67, Chapter 19a."). However, Wintle-Butts failed to preserve this argument because she did not present it to CSRO. "We have consistently held that issues not raised in proceedings before administrative agencies are not subject to judicial review except in exceptional circumstances." *See Sullivan v. Board of Oil, Gas & Mining*, 2008 UT 44, ¶ 14, 189 P.3d 63 (citation and internal quotation marks omitted).

¶22     Wintle-Butts contends that this issue was preserved in her statement of grievance, in which she alleged that she was wrongfully dismissed and that her dismissal "was not within the provisions of the policy and without [her] right to appeal as a career service employee under Utah Code 63F-1-106." While we agree that Wintle-Butts raised the issue of wrongful dismissal before CSRO, Wintle-Butts has not demonstrated, and we see nothing in the record to support the contention, that she ever argued to CSRO that DTS's alleged violation of its rules was an independent basis for CSRO jurisdiction under Utah Code section 67-19a-202(1)(vii).

---

[7](...continued) jurisdiction over her grievance, we decline to address it as inadequately briefed. *See* Utah R. App. P. 24(a)(9); *State v. Lamb*, 2013 UT App 5, ¶ 11, 294 P.3d 639.

Because the Administrator did not address this issue in his decision, Wintle-Butts faults the Administrator for "fail[ing] to put 2 and 2 together" to determine that the alleged violation of her due process rights granted jurisdiction to CSRO. However, the onus was on Wintle-Butts to specifically raise this issue to CSRO so that it could have been adjudicated. *See Dinger v. Department of Workforce Servs.*, 2013 UT App 59, ¶ 28, 300 P.3d 313. Because Wintle-Butts did not preserve this argument before CSRO, we do not address it further.

CONCLUSION

¶23    Wintle-Butts has failed to demonstrate that she was demoted or to properly raise any other ground upon which CSRO could exercise jurisdiction. Therefore we need not address her arguments regarding whether CSRO's jurisdiction survived her subsequent voluntary transfer or the validity of her transfer or grievance waiver. We conclude that the Administrator did not err in dismissing Wintle-Butts's grievance for lack of jurisdiction and accordingly approve the Administrator's decision.

——————