IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20090250-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (October 12, 2012) |
| Allen Goode, | ) | |
| | ) | 2012 UT App 285 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Provo Department, 061402418
The Honorable James R. Taylor

Attorneys:     Douglas J. Thompson, Provo, for Appellant
               Mark L. Shurtleff and Brett J. DelPorto, Salt Lake City, for Appellee

-----

Before Judges Orme, Roth, and Christiansen.

ORME, Judge:

¶1     Defendant appeals from his conviction on several counts of sexual abuse of a child, arguing that his trial counsel was ineffective. We affirm.

¶2     Defendant's crimes came to light after the victim's sister found a note written by the victim mentioning that Defendant had come into her bed and touched her inappropriately. The victim testified that the abuse took place over a four-year period. She explained that the inappropriate touching happened in the morning hours, around 6:30, just after her mother left for work each day.

¶3    At trial, defense counsel developed an alibi defense by calling several witnesses to testify that Defendant met friends for coffee every morning between 6:00 and 7:00 during the years of the alleged abuse. Defense counsel also used an unofficial transcript from an interview conducted by the Children's Justice Center, wherein the victim described the abuse, to show inconsistent statements within the transcript about what the victim claimed Defendant was wearing during the episodes of abuse. Before the end of trial, however, a police detective who had viewed a recording of the interview testified that the transcript was inaccurate, negating the claim that the victim's statements were inconsistent. At the conclusion of his trial, Defendant was convicted. This appeal followed.

¶4    Defendant filed a motion pursuant to rule 23B of the Utah Rules of Appellate Procedure, hoping to secure a district court hearing at which he could establish his ineffective assistance of counsel claims. We granted the motion. Defendant's claims boil down to two theories. First, Defendant argues that trial counsel was ineffective for failing to obtain a transcript of Defendant's interview with a police detective in which Defendant discussed his alibi shortly after the abuse was reported. The interview transcript contains a statement by Defendant about getting coffee with friends each morning, which was consistent with the testimony of the several alibi witnesses called at trial. The detective did not mention this statement in his testimony at trial when recounting the details of the interview, and Defendant contended at the 23B hearing that effective counsel would have obtained the transcript and introduced that statement in an effort to further corroborate the testimony of the alibi witnesses.[1] Second, Defendant claims that trial counsel should have suspected that there was an error in the Children's Justice Center interview transcript and should have been prompted to obtain and view the videotape of the interview to verify the victim's statements about Defendant's clothes. Defendant reasons that doing so would have prevented counsel's misguided cross-examination of the victim and precluded the State from having the opportunity to rehabilitate her and thereby deflate a defense argument in front of the jury.

_____

[1]Defendant's trial counsel explained at the 23B hearing that the additional statement within the transcript would not have been particularly helpful in establishing the alibi because he had called so many witnesses to establish the alibi.

¶5     At the close of the 23B hearing, the district court concluded that trial counsel was not ineffective.  The court held that even if it constituted objectively deficient performance, omitting Defendant's statement to the detective that Defendant usually went for coffee in the mornings was not prejudicial, considering the abundance of witnesses addressing this alibi defense.  The court also found that defense counsel had no reason to suspect an error in the transcript of the victim's interview at the Children's Justice Center.

I.

¶6     "In ruling on an ineffective assistance claim following a [r]ule 23B hearing, we defer to the trial court's findings of fact, but review its legal conclusions for correctness."  *State v. Hernandez*, 2005 UT App 546, ¶ 13, 128 P.3d 556 (alteration in original) (citation and internal quotation marks omitted).  "To establish ineffective assistance of counsel, a defendant must demonstrate both that 'counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment,' and that counsel's deficient performance was prejudicial."  *State v. Perry*, 2009 UT App 51, ¶ 11, 204 P.3d 880 (quoting *State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984))).  We begin our analysis with a strong presumption that counsel was competent and effective, "giv[ing] trial counsel wide latitude in making tactical decisions," and we "will not question such decisions unless there is no reasonable basis supporting them."  *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996).  Even if deficient performance is established, Defendant still must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  We likewise begin our analysis of this second prong with the "'strong presumption' that the outcome of the particular proceeding is reliable."  *Benvenuto v. State*, 2007 UT 53, ¶ 23, 165 P.3d 1195 (quoting *Strickland*, 466 U.S. at 699).

¶7     Regarding defense counsel's failure to obtain a transcript of Defendant's interview with the detective, we agree with the district court that even if counsel's actions were objectively deficient, there is no reasonable probability that "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 692.[2]  Defendant's

---

[2]Because both prongs of the *Strickland* test must be met to establish ineffective

(continued...)

comment to the detective that he frequently went for coffee in the mornings related to an alibi that was thoroughly developed by Defendant's several witnesses who testified to his daily routine in this regard. It is unreasonable to assume that the jury would have been swayed to render a different verdict merely because Defendant's statement to the detective was consistent with the statements of the many alibi witnesses at trial.[3]

II.

¶8     The district court also correctly concluded that counsel had no reason to suspect an error in the transcript of the victim's interview at the Children's Justice Center. The transcript did contain a small conflict in the detail between two of the victim's many statements. But the discrepancy was of the sort that is not at all uncommon in a recounting of abuse by a young victim. Counsel's identification of this inconsistency and attempt to impeach the victim's testimony with it showed counsel's diligence in seeking reasonable avenues to build a defense in a difficult case, even though this particular avenue ultimately fell flat for reasons that could not have been reasonably anticipated. There was simply no reason for counsel to have suspected that the

---

[2](...continued)
assistance of counsel, we need not always address both prongs. In this instance, Defendant's failure to establish the prejudice prong is especially clear, making consideration of the other prong unnecessary. *See Strickland*, 466 U.S. at 697 (explaining that we need not address both components of the inquiry if the defendant makes an insufficient showing on one).

[3]The detective's trial testimony was that Defendant said during his police interview that his daily routine was to "get up, shower, do some stuff, get ready for work and then leave about 7:15 and sometimes he would take the girls to school." In his interview with the detective, Defendant described his routine in these terms: "I'd get up, shower, do my stuff, get ready for work, I'd go to coffee and go to work. . . . I'd be out of the house by quarter after seven." We agree with the district court's conclusion that "[t]he presentation of ten witnesses who stated that Defendant was having coffee or breakfast with friends during the period of time the victim alleged she was abused established a strong, though not conclusive alibi. Impeaching [the detective] by pointing out that he omitted mention of Defendant's 'coffee' alibi was not prejudicial."

inconsistent statements were the result of a transcription error as opposed to a child's imperfect memory.[4] Accordingly, Defendant fails to show that counsel's performance was deficient and there is no need to address whether there was prejudice. *See supra* note 2.

¶9    Affirmed.

_____
Gregory K. Orme, Judge

-----

¶10    I CONCUR, EXCEPT THAT AS TO SECTION II, I CONCUR ONLY IN THE RESULT:

_____
Stephen L. Roth, Judge

-----

---

[4]In hindsight, of course, counsel's failure to view the videotape and square it against the transcript seems inept. But it does not follow that the error would have seemed obvious—or even likely—to defense counsel at the time. To conclude that counsel's performance in this respect was objectively deficient, it would have to be concluded, in essence, that any time a transcript is furnished, competent counsel will routinely insist on listening to the audio recording or watching the video from which the transcript was prepared to see if the transcription was fully accurate. Defendant has not claimed, much less shown, that such a time-consuming practice has been recognized as integral to the effective representation of a criminal defendant.

CHRISTIANSEN, Judge (concurring in the result):

¶11    I concur in Part I of the majority decision but I concur in the result only as to Part II because I find it concerning that defense counsel relied on an unofficial transcript to prepare his cross-examination of the victim and did not review the original video recording of the victim's Children's Justice Center (CJC) interview prior to questioning the victim at trial.  In my opinion, when presented with an original video recording of the victim's CJC interview and an unofficial transcript made from that recording by an employee of the CJC, effective counsel should have examined the original evidence to prepare for trial.

¶12    I believe, however, that we need not determine whether a failure to review the original recording, rather than rely on the unofficial transcript, amounts to a deficiency in counsel's performance because Defendant has not shown prejudice—i.e., that absent the allegedly deficient performance there is "'a reasonable probability that . . . the result of the proceeding would have been different.'"  *See State v. Templin*, 805 P.2d 182, 187 (Utah 1990) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  Given the jury's rejection of Defendant's alibi defense even after numerous defense witnesses testified, Defendant's claim that the jury would have been less likely to believe the victim if the State had not been given an opportunity "to rehabilitate and bolster [the victim's] credibility and memory" is purely speculative.  *See Fernandez v. Cook,* 870 P.2d 870, 877 (Utah 1993) ("[P]roof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality.").  It is unlikely that the ultimate outcome of Defendant's case would have been different had his counsel not attempted to impeach the victim's statements about the clothing she and Defendant were wearing during the abuse.

¶13    As any prejudice analysis must begin with a "'strong presumption' that the outcome of the particular proceeding is reliable," *see Benvenuto v. State*, 2007 UT 53, ¶ 23, 165 P.3d 1195 (quoting *Strickland*, 466 U.S. at 689), based upon the evidence presented at trial and the jury's rejection of Defendant's alibi defense, Defendant fails to show that any prejudice resulted from counsel's failure to review the original video recording of the victim's CJC interview to confirm that there were actual inconsistencies in the victim's statements.  Accordingly, though I disagree with the majority decision that defense counsel adequately prepared for trial by relying on an unofficial transcript prepared by a source connected to the state, I concur in the result of Part II because

Defendant has failed to show a reasonable probability that, despite counsel's failure to review the original evidence, the result of the case would have been different.


_____

Michele M. Christiansen, Judge