2019 UT App 142

## THE UTAH COURT OF APPEALS

PAUL JOHN HATTRICH,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20170158-CA
Filed August 22, 2019

Sixth District Court, Richfield Department
The Honorable Marvin D. Bagley
No. 150600030

Elizabeth Hunt, Attorney for Appellant

Sean D. Reyes and Daniel W. Boyer,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and JILL M. POHLMAN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1    Paul John Hattrich appeals from the district court's
summary judgment in favor of the State and denial of his
petition for post-conviction relief. We affirm.

BACKGROUND

¶2    Hattrich occasionally invited a neighbor child (Victim)
over to do yard work, play video games, and take care of
Hattrich's dogs. At some point, Hattrich began showing Victim
print, digital, and video pornography and later performed oral
sex on Victim. Eventually, he would perform oral sex on Victim
about once a week through the summer but less frequently

during the school year. Hattrich told Victim that he had engaged in sex acts with other children, including Victim Two and Victim Three.

¶3 Between 1995 and 1999, Hattrich frequently engaged in oral sex with Victim Two and had anal sex with him twice. The abuse usually occurred at Hattrich's home, and Hattrich once videotaped the crime. Hattrich also gave Victim Two free access to pornography.

¶4 When Victim Three was about ten or eleven, he and the two other victims went to Hattrich's house approximately two to three times per week. Hattrich took all three boys hunting, let them spend time at his house, and let them look at pornographic movies and magazines in his home. When the boys visited, Hattrich also sexually abused them.

¶5 The State charged Hattrich with thirty criminal acts involving the three victims, including rape of a child, sodomy on a child, aggravated sexual abuse of a child, sexual abuse of a child, and dealing in material harmful to a minor. Before the preliminary hearing, Hattrich filed three motions: (1) a motion to change venue, (2) a motion to dismiss nine charges of aggravated sexual abuse of a child, and (3) a motion to sever some of the charged offenses for purposes of trial.[1] The trial court[2] denied all three motions but did sever two charges to be

---

1. In his motion to sever, Hattrich asked the court to conduct seven separate criminal trials, with each trial resolving between two and eight of the charged offenses.

2. The present appeal stems from the district court's summary judgment ruling on Hattrich's petition for post-conviction relief, a matter that, though challenging the underlying criminal convictions, is civil in nature. *See Finlayson v. State*, 2015 UT App 31, ¶ 17, 345 P.3d 1266 (observing that "a post-conviction proceeding is ultimately civil in nature and does not implicate

(continued…)

tried separately—the charges alleging Hattrich's dealing in material harmful to a minor.

¶6     Following a preliminary hearing, the trial court bound Hattrich over on twenty-seven separate counts. The State subsequently amended the information to reflect these twenty-seven charges—eliminating from the original information one count dismissed at the preliminary hearing and removing the two charges that had been severed.

¶7     Hattrich filed three additional motions after the preliminary hearing: (1) a motion to dismiss the amended information on multiplicity grounds or, in the alternative, to reduce the counts; (2) a motion to quash the bindover on eighteen of the charges; and (3) a motion to dismiss the amended information. Hattrich's trial counsel also prepared and filed a witness list and exhibit list in anticipation of trial.

¶8     The day before trial was to commence, Hattrich pleaded no contest to three charges of sodomy on a child, each a first-degree felony. In exchange, the State agreed to dismiss the remaining twenty-four charges and to recommend that Hattrich's sentence on each charge run concurrently to the others. Hattrich believed that, by pleading no contest, he could effectively avoid the potential twenty-five-years-to-life sentences that would be imposed if he were convicted of the two child-rape charges. Those charges were to be dismissed as part of the plea agreement. Hattrich conditioned his no contest plea on retaining his "right to appeal any issues which have arisen or

---

(…continued)

the same constitutional protections as do criminal prosecutions" (quotation simplified)). To avoid any confusion, we refer to the court presiding over Hattrich's criminal case as the trial court and refer to the court overseeing his post-conviction matter as the district court. We note, however, that the same judge presided over both matters and that no trial occurred.

been litigated in this case." As part of his plea, Hattrich signed a "Waiver of Rights by Defendant" (the Waiver) in which he acknowledged that he read, understood, and agreed with the provisions of the Waiver, including that he made his plea of no contest of his "own free will and choice." Hattrich also affirmed that he understood that by pleading no contest, he was giving up certain constitutional protections. During the plea hearing, the trial court conducted a plea colloquy during which Hattrich affirmed that he understood the terms of the plea agreement and Waiver.

¶9 The trial court accepted Hattrich's no contest pleas and sentenced him to fifteen years to life in prison on each of the three charges. Consistent with the State's recommendation, the court ordered the sentences to run concurrently. Hattrich appealed his convictions, raising several issues, and this court affirmed. *See State v. Hattrich*, 2013 UT App 177, 317 P.3d 433.

¶10 Hattrich subsequently filed a petition for post-conviction relief, asserting three reasons his convictions should be vacated. He first asserted that his no contest pleas were not knowing and voluntary because he did not understand that his reserved right of appeal was limited by the preservation and briefing requirements associated with an appeal. Second, he contended that the prosecution had breached the plea agreement by raising preservation and inadequate-briefing challenges to Hattrich's direct appeal. Third, Hattrich alleged certain instances of ineffective assistance by his trial and appellate counsel.[3] Hattrich also filed a request for discovery relating to one of his ineffective assistance claims, which the district court denied.

¶11 The State and Hattrich each filed motions for summary judgment. After briefing and oral argument, the district court granted the State's motion and denied Hattrich's motion.

---

3. Hattrich was represented by the same counsel in the trial court and on appeal.

ISSUES AND STANDARDS OF REVIEW

¶12    Hattrich raises a number of issues on appeal. He first argues that the district court erred in granting summary judgment to the State with respect to Hattrich's claims that he should be permitted to withdraw his no contest pleas because they were not knowingly and voluntarily entered and that the State's appellate counsel breached the plea agreement. He also argues that the court erred in granting summary judgment to the State on his various claims that he received ineffective assistance of counsel in both pre-trial matters and on appeal. We review the district court's grant of summary judgment for correctness, affording no deference to the district court. *Garcia v. State*, 2018 UT App 129, ¶ 8, 427 P.3d 1185. "We will affirm such a decision when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quotation simplified); *see also* Utah R. Civ. P. 56(a). "In making this assessment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Ross v. State*, 2012 UT 93, ¶ 18, 293 P.3d 345 (quotation simplified).

¶13    Hattrich further argues that the district court erred when it denied his request for discovery in pursuing his post-conviction petition. We review the district court's discovery decisions for an abuse of discretion. *Menzies v. Galetka*, 2006 UT 81, ¶ 59, 150 P.3d 480.

ANALYSIS

I. Hattrich's Knowing and Voluntary Conditional No Contest Pleas

¶14    Hattrich asserts that he did not knowingly and voluntarily enter his conditional no contest pleas in which he reserved the right to appeal. "A plea is not knowing and voluntary when the record demonstrates that the accused does

not understand the nature of the constitutional protections that he is waiving, or when he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *State v. Alexander*, 2012 UT 27, ¶ 16, 279 P.3d 371 (quotation simplified). Further, a court must permit a defendant to withdraw a guilty plea when "the State made a promise it did not or could not fulfill." *State v. Copeland*, 765 P.2d 1266, 1276 (Utah 1988); *accord State v. Norris*, 2002 UT App 305, ¶ 10, 57 P.3d 238.

¶15    Here, after a thorough plea colloquy, the trial court concluded that Hattrich understood the proposed waiver of trial rights listed in the plea agreement and that he "voluntarily and intentionally waived [these] constitutional rights." Indeed, Hattrich informed the trial court that he had read the agreement, understood it, and signed it of his own volition. Moreover, Hattrich acknowledged the factual basis for the plea and stated that he understood the legal elements and potential punishment associated with criminal charges to which he wished to plead no contest. The trial court therefore accepted Hattrich's no contest pleas and proceeded to sentencing.

¶16    Hattrich's primary argument[4] in support of his claim that he did not knowingly and voluntarily enter the conditional plea

_____

4. Hattrich additionally asserts that the plea agreement was not properly incorporated into the record because the court did not ask Hattrich whether he had read the agreement. *See State v. Lehi*, 2003 UT App 212, ¶ 9, 73 P.3d 985. There is no merit to this assertion because it is clear from the record that the court explicitly asked Hattrich, "Did you read the agreement before you signed it?" And Hattrich answered, "Yes, I did, Your Honor."

    Hattrich also asserts that he was improperly coerced to plead because he mistakenly believed he could be subject to rape-of-a-child charges if he did not, when in actuality those charges should have been for the lesser offense of sodomy on a

(continued…)

agreement rests on his assertion that the agreement's "plain language purported to allow Hattrich to appeal 'any issues which have arisen or been litigated in this case,' regardless of whether the issue was preserved in the trial court or properly presented on appeal," despite this not being something the State could deliver. *See Copeland*, 765 P.2d at 1276. Hattrich raised six issues on direct appeal. *See generally State v. Hattrich*, 2013 UT App 177, 317 P.3d 433. The State contested some of these claims on the grounds that Hattrich failed to preserve them in the trial court and that he did not adequately brief them on appeal. Resolving Hattrich's direct appeal, this court declined to consider one of the claims[5] Hattrich raised both because it was unpreserved and because "[Hattrich's] plea agreement limits the issues he may raise on appeal to those 'which have arisen or been litigated in this case.'" *Id.* ¶¶ 24, 46.

---

(…continued)

child. But Hattrich has provided no support for his repeated assertion that these charges should have been reduced, as discussed *infra* ¶¶ 37–38.

Finally, Hattrich asserts for the first time on appeal that he mistakenly believed that the rape-of-a-child charges carried a twenty-five-to-life sentence, when he actually would have been subject to only a fifteen-to-life sentence under the version of the Utah Code in effect at the time the offenses were committed. *Compare* Utah Code Ann. § 76-5-402.1 (Michie 1996), *with id.* (LexisNexis 2017). However, this issue is not preserved, and Hattrich has not asserted that it should be considered under an exception to the preservation rule. We therefore do not consider it further. *See State v. King*, 2006 UT 3, ¶ 13, 131 P.3d 202.

5. This court identified two issues that Hattrich had failed to preserve in the district court but nevertheless resolved one of those issues on the merits. *See State v. Hattrich*, 2013 UT App 177, ¶ 25, 317 P.3d 433.

¶17 Hattrich asserts that had he been aware that his appeal would be limited by our preservation and briefing requirements, he would not have entered the plea. He further asserts that the plea agreement was illusory because the State purported to eliminate those procedural requirements as part of the consideration for the agreement, yet had no authority to do so, *see* Utah R. App. P. 1(a) ("These rules govern the procedure before the Supreme Court and the Court of Appeals of Utah in *all* cases." (emphasis added)); *State v. Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443 (observing that "parties are required to raise and argue an issue in the trial court in such a way that the court has an opportunity to rule on it" and the failure to do so "generally precludes a party from arguing that issue in an appellate court, absent a valid exception" (quotation simplified)); *MacKay v. Hardy*, 973 P.2d 941, 947–48 (Utah 1998) (observing that the Utah Rules of Appellate Procedure "set forth the requirements that appellants and appellees *must* meet when submitting briefs before [Utah's appellate courts]" and that appellate courts have consistently held "that we will not address issues not adequately briefed"). He relatedly contends that the State breached the plea agreement when it argued that he failed to preserve certain issues in the trial court and failed to adequately brief certain issues on appeal.

¶18 We apply contract principles when interpreting plea agreements. *State v. Davis*, 2011 UT App 74, ¶ 3 n.2, 272 P.3d 745. And we generally begin such a review by "looking first to the plain language of a contract." *State v. Terrazas*, 2014 UT App 229, ¶ 27, 336 P.3d 594 (quotation simplified). Here, the reservation of Hattrich's right to appeal in the plea agreement, in its entirety, reads as follows: "These guilty pleas are conditional on [Hattrich's] right to appeal any issues which have arisen or been litigated in this case."

¶19 The language of the plea agreement is straightforward and explicit. It says nothing about removing the otherwise uniform expectations of preservation of issues for appeal or the requirement that issues raised on appeal must be adequately

briefed to the appellate court. Hattrich asserts that he believed this agreement afforded him the opportunity to challenge on appeal—and receive a merits review of—any issue he raised, regardless of how well it was briefed and even if it was unpreserved and not argued under an exception to the preservation rule. But any such belief would have been unreasonable in light of the plain language of the agreement, which contains nothing suggesting that Hattrich would not be bound by the court's standard procedural rules in pursuing his appeal. In light of the clear and unambiguous language of the agreement, Hattrich's claim that he was "genuinely and legitimately confused" about the benefit he was to receive under the plea agreement is unpersuasive.[6] *See State v. Norris*, 2002 UT App 305, ¶ 12, 57 P.3d 238 (quotation simplified). Likewise, Hattrich cannot establish that the benefits promised to him in the agreement were illusory, because the agreement did not purport to grant him the right to avoid the preservation rule or standard briefing requirements. Accordingly, the district court correctly determined, as a matter of law, that Hattrich was not entitled to withdraw his plea.

¶20 Hattrich also contends that the district court erred in determining that the State did not breach the plea agreement by arguing in the direct appeal that Hattrich had failed to preserve certain issues in the trial court and that he had failed to adequately brief certain issues. Because we conclude that the plea agreement did not purport to eliminate preservation rules and adequate briefing requirements, Hattrich's breach argument fails as a matter of law.

---

6. Hattrich has asserted no basis for his subjective belief that the agreement permitted him to raise unpreserved claims or avoid rules of procedure apart from his flawed interpretation of the "plain terms" of the plea agreement—for example, that he was led to this belief by representations of the prosecutor or another individual.

II. Ineffective Assistance of Counsel

¶21   Hattrich argues that the district court erred when it rejected his claims of ineffective assistance of counsel and granted the State's motion for summary judgment. He points to several instances in which trial and appellate counsel allegedly performed deficiently. The district court granted summary judgment to the State on each of these claims. We first address those claims that are procedurally barred pursuant to the Post-Conviction Remedies Act (the PCRA), then consider Hattrich's remaining claims.

A.     The PCRA's Procedural Bar

¶22   Hattrich asserted in his PCRA petition that his trial counsel was ineffective in litigating pre-trial notice issues and a motion regarding joinder of charges. Hattrich raised both of these grounds in his original criminal appeal, although he did not present them as claims of ineffective assistance of counsel. *See State v. Hattrich*, 2013 UT App 177, ¶¶ 20–21, 36–44, 317 P.3d 433. The PCRA precludes relief "upon any ground that . . . was raised or addressed at trial or on appeal." Utah Code Ann. § 78B-9-106(1)(b) (LexisNexis 2018). This procedural bar "applies to all claims, including constitutional questions." *Johnson v. State*, 2011 UT 59, ¶ 10, 267 P.3d 880 (quotation simplified). Even if a PCRA claim is "framed somewhat differently," a post-conviction claim will be barred if it is "substantially similar" and "rest[s] on arguments" used for a claim "raised at trial or on appeal." *Myers v. State*, 2004 UT 31, ¶¶ 14 & n.1, 18, 94 P.3d 211. We now address two claims that we conclude are barred by the PCRA.

1.     Pre-Trial Notice and Charging

¶23   Hattrich argues that his trial counsel performed deficiently by failing to adequately challenge the State's criminal charging procedure and the pre-trial notice he was provided. In his direct appeal, Hattrich contended that the various charging documents "failed to provide adequate notice of the dates and

locations of his then-alleged crimes, thereby 'wreak[ing] havoc on [his] ability to defend himself." *Hattrich*, 2013 UT App 177, ¶ 36. The "constantly moving targets in terms of dates, times, and events," he argued, "hampered his defense and violated his due process rights." *Id.* ¶ 40 (quotation simplified). He asserted that it was the State's burden to show both that its amended charging documents did not charge additional or different offenses and that the amendments did not prejudice Hattrich's substantial rights. *See id.* ¶ 38. Relying on our supreme court's ruling in *Tillman v. Cook*, 855 P.2d 211 (Utah 1993), this court rejected Hattrich's argument, determining that "even if an amended information does create a new and additional offense, reversal is only appropriate if the defendant can demonstrate that his or her substantial rights are prejudiced as a result of the amendment." *Hattrich*, 2013 UT App 177, ¶¶ 38–39. The court then went on to conclude that Hattrich had not established that his substantial rights were violated because he was "sufficiently apprised of the State's evidence upon which" his charges were based. *See id.* ¶¶ 39–41.

¶24 Hattrich contends that his appellate counsel did not adequately advocate his position on appeal.[7] In assessing this

---

7. Hattrich also asserts that his appellate counsel was ineffective for failing to ensure that the bill of particulars filed by the State was included in the record on appeal, which resulted in this court assuming that the bill was adequate. *See id.* ¶ 41. But this court's assessment of the bill of particulars ultimately did not affect the outcome of the case, because we observed that "the notice to which a defendant is constitutionally entitled may come through one or all of three sources" and that the State provided Hattrich "with all three forms of notice in this instance." *Id.* (quotation simplified). In addition to the bill of particulars, we observed that "a review of both the Third Amended Information and the section 77-14-1 demand response confirms that the State gave [Hattrich] sufficiently precise notification." *Id.* ¶ 42 (quotation simplified).

argument in the context of the summary judgment, the district court found that there was "little practical difference" between Hattrich's ineffective assistance claim and his appellate claim— "[b]oth contend, at their core, that [Hattrich's] due process rights were violated, and both are precluded by a finding of adequate notice." In other words, Hattrich has pointed to no argument that appellate counsel failed to make that would have altered this court's determination that his challenge to the charging procedure was defeated by the adequate notice. Hattrich essentially reargues the extent to which the amended information created new and different offenses that subjected him to increased punishment and whether he was substantially prejudiced. But these arguments were previously resolved on direct appeal. We therefore agree with the district court that this claim is merely an attempt to re-litigate the same notice claims that Hattrich raised on direct appeal. *See Gardner v. Holden*, 888 P.2d 608, 615 (Utah 1994). The claim is therefore procedurally barred. Utah Code Ann. § 78B-9-106(1)(b) ("A person is not eligible for relief under this chapter upon any ground that . . . was raised or addressed at trial or on appeal . . . .").

2.    Motion to Sever

¶25    Hattrich asserts that certain of his criminal charges "were not (1) part of the same conduct or otherwise connected in their commission and were not (2) part of the same scheme or plan." *See* Utah Code Ann. § 77-8a-1(1) (LexisNexis Supp. 2018). Consequently, he contends that these criminal charges were improperly joined together in the single charging document and should have been severed pursuant to Utah Code section 77-8a-1(4)(a). Hattrich raised this argument in his direct appeal, and unpersuaded, this court concluded, "Because the charges were properly joined and because Defendant has failed to demonstrate any prejudice, the trial court did not abuse its discretion by denying Defendant's motion to sever." *Hattrich*, 2013 UT App 177, ¶ 21. In the instant PCRA petition, Hattrich presents the exact same argument through the lens of an ineffective assistance of counsel claim. Because this argument

was already raised and addressed in Hattrich's direct appeal,[8] we conclude that the district court correctly granted summary judgment to the State on this claim.

B.      Remaining Claims of Ineffective Assistance of Counsel

¶26     To prevail on an ineffective assistance of counsel claim, a defendant must establish that counsel's performance was objectively deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because both prongs of the *Strickland* test must be met to establish ineffective assistance of counsel, we need not always address both prongs." *State v. Goode*, 2012 UT App 285, ¶ 7 n.2, 288 P.3d 306.

1.      Communication of a Plea Offer

¶27     Hattrich asserts in his PCRA petition that his trial counsel performed deficiently by failing to relay to him information about a favorable plea offer. He particularly asserts that while counsel allegedly communicated an offer from the State for Hattrich to plead guilty to one unspecified first-degree felony, counsel did not tell him when that offer would expire. At that point, Hattrich asserts, his counsel "left him in the jail to think about it until after the offer expired."

---

8. Although Hattrich asserts that he was prejudiced because counsel did not adequately brief this issue on appeal, he has made no attempt to show how more complete briefing would have altered the outcome. As he observes, this court "looked beyond the [allegedly] inadequate filings and independently determined that the charges in [Hattrich's] underlying case were properly joined." Without explaining how better briefing would have been likely to alter this court's decision on the merits, we are hard-pressed to see how any inadequate briefing prejudiced Hattrich.

¶28    This general type of claim—the alleged failure to communicate a plea offer—is governed by *Missouri v. Frye*, 566 U.S. 134 (2012). In that case, Frye's defense counsel failed to communicate a favorable, written plea offer to him, and the offer expired. *Id.* at 138–39. Subsequently, Frye agreed to a less favorable plea offer. *Id.* at 139. The Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 145. To succeed on a *Frye* claim then, Hattrich has the burden to show (1) that trial counsel failed to communicate a formal offer, (2) that the offer's terms were more favorable than the later offer, (3) that Hattrich likely would have accepted the earlier plea offer, and (4) that the plea likely would have been entered "without the prosecution canceling it or the trial court refusing to accept it." *Id.* at 145–48. We consider only the first and fourth elements and conclude that the district court did not err when it granted the State summary judgment on Hattrich's *Frye* claim.

¶29    Here, Hattrich asserts that trial counsel communicated the State's offer that he plead guilty to one unspecified first-degree felony. In support of his petition, however, Hattrich offered no details about the timeline of this alleged offer, when the offer was to expire, or even the felony offense the State's offer entailed. In the PCRA proceedings, the State proffered email correspondence from the prosecutor in the underlying criminal case. The prosecutor, after reviewing the extensive file, found only one plea offer dated May 2009 in which the State sought Hattrich's guilty pleas to rape of a child and two counts of sodomy on a child, all first-degree felonies.[9] The prosecutor also indicated that he does not put deadlines on plea offers before trial. Considering Hattrich's non-specific allegations of an earlier

---

9. Presumably, this was not the offer Hattrich recalls, as it was less favorable than the ultimate offer he agreed to, which permitted him to plead no contest to three counts of sodomy on a child without pleading to any of the child-rape charges.

offer, the district court concluded that Hattrich could not establish a *Frye* claim. In particular, the court determined that Hattrich had not demonstrated that the State's plea offer was a formal offer and concluded that neither the prosecution nor the trial court would have prevented the offer from being accepted or entered. *See id.* at 148.

¶30 Hattrich argued that *Frye* "requires attorneys to promptly communicate and consult with their clients concerning *all* plea offers." Consequently, he contends that trial counsel performed deficiently when counsel allowed the alleged plea offer to expire. The district court concluded, and we agree, that *Frye* does not impose such a broad requirement. The question before the Supreme Court was "whether defense counsel has the duty to communicate the terms of a formal offer to accept a plea on terms and conditions that may result in a lesser sentence, a conviction on lesser charges, or both." *Id.* at 145. Indeed, the Supreme Court expressed at least some concern regarding "late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted" and suggested, as a protective measure, that courts consider "a formal offer [to mean] that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Id.* at 146.

¶31 Here, Hattrich produced no documented formal plea offer matching the one he alleged had been presented to him. Rather, at his request, the original prosecutor reviewed the entire file and confirmed that there was no indication that any such offer had been made. Accordingly, the district court correctly concluded that Hattrich had not established that counsel performed deficiently by failing to follow up with Hattrich regarding the alleged plea offer.

¶32 The district court further concluded that Hattrich had not established that the nondescript plea likely would have been entered "without the prosecution canceling it or the trial court

refusing to accept it." *See id.* at 147. The alleged plea offer, resolving allegations of years of child sexual abuse perpetrated against three different victims, entailed Hattrich pleading guilty to one unspecified first-degree felony and the State presumably dismissing the remaining twenty-six charges. Suggesting that the plea was likely to be entered by the court, Hattrich asserts that the criminal trial would have involved "evidentiary difficulties" and "discomfort" and that the Board of Pardons has the authority to "imprison people for life when necessary in any first degree felony case." We are not persuaded that these vague statements, without more, establish a reasonable probability that the alleged plea would have been approved by the court. Because Hattrich did not establish deficient performance of counsel, we discern no error in the district court's decision to grant summary judgment to the State.

2.      Coercion to Enter the No Contest Plea

¶33      Hattrich asserts that he was "coerced" to enter into the plea agreement by his trial counsel who was unprepared for trial. Supporting his argument that counsel was not prepared for trial, Hattrich pointed to trial counsel's pre-trial witness list, which omitted Hattrich's brother and misspelled the name of Hattrich's sister. Hattrich further identified trial counsel's failure to obtain "airline tickets demonstrating when Hattrich's mother was staying with him for months at a time when the sexual abuse was allegedly occurring in Hattrich's home." Lastly, he suggested that the timing of the plea—entered the day before trial—established trial counsel's "readily apparent" lack of preparation for trial.

¶34      Considering these facts, the district court determined that Hattrich had failed to demonstrate either that trial counsel was unprepared for trial or that, even if trial counsel had been more prepared, Hattrich would have insisted on proceeding to trial rather than entering the no contest pleas. On appeal, Hattrich simply maintains that trial counsel's "failure to subpoena witnesses, incomplete witness list, [and] unfounded exhibit list

all sustain Hattrich's sworn petition averring that trial counsel, who was unprepared to try the case, coerced the pleas."

¶35 Hattrich offers no persuasive argument that he was coerced into pleading guilty, nor does he explain why the district court's decision was erroneous. Instead, he simply provides unsupported, conclusory statements to that effect. For instance, he reiterates his primary complaint that the plea agreement "should have barred the prosecution from asserting waiver and other technical means of avoiding appellate review of Hattrich's claims" and asserts that "[t]his confirms the illusory nature of the agreement trial counsel advised and coerced Hattrich to accept."

¶36 Moreover, Hattrich does not confront the district court's determination that his "claim of coercion is refuted by the statements he made during the [trial court's] colloquy," through which statements Hattrich "affirmed he entered the parties' plea agreement of his own free will." Accordingly, this argument is unavailing.

3.     Incorrect Charging

¶37 Hattrich contends that trial counsel performed deficiently by not challenging two child-rape charges that he asserts should have been charged as sodomy on a child. In doing so, he fails to establish that the underlying facts could not support child-rape charges. "[W]here there is no legal basis to support the argument or action that the defendant claims trial counsel should have taken, it is pointless to inquire whether the factual record supports the defendant's claim that counsel's alleged failure constituted ineffective assistance." *State v. Litherland*, 2000 UT 76, ¶ 15 n.5, 12 P.3d 92; *see also State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

¶38 The Utah Code states that "any touching, however slight, is sufficient to constitute the relevant element of the offense" of

"rape of a child." Utah Code Ann. § 76-5-407(b)(iv) (LexisNexis 2017). Hattrich does not address this provision or discuss why his action of having anal sex twice with one victim could not support these charges under the statute. To the district court, Hattrich's entire argument consisted of two bare assertions: (1) that the definition of sexual intercourse in the child-rape statute should be limited to "vaginal intercourse" and (2) that "specific statutes control over more general ones." With respect to the first assertion, Hattrich relied on Pennsylvania case law and made no attempt to explain why Utah's child-rape statute should employ such a definition. With respect to the second, he made no attempt to either discuss the parameters of the cited principle or apply it to the statutes at hand. The district court rejected this discussion as inadequate to demonstrate that Hattrich's proposed challenge to the criminal charges would have been successful if they had been raised in the underlying proceedings. On appeal, Hattrich engages in even less discussion and simply proceeds on the assumption that there was a legitimate basis for counsel to have challenged the child-rape charges. Because no such basis has been established, Hattrich cannot demonstrate that his counsel performed deficiently.

4.     Scope of the Search

¶39 Completing a search of Hattrich's home, police discovered a fictional manuscript written by Hattrich. The story incorporates a pedophilic character who grooms and sexually exploits young boys. Hattrich argues that trial counsel performed deficiently by failing to move to suppress this manuscript because this particular item of evidence was not specifically described in the search warrant and fell outside the scope of the warrant authorizing the search. Hattrich explained to the district court that the manuscript, at least hypothetically, "was powerful prejudicial evidence that would have been devastating at trial, as it delved into the mind of the pedophilic character, and undoubtedly would have led the jurors to convict Hattrich out of subconscious prejudice and on a theory of propensity." In its motion for summary judgment, the State

suggested several possible reasons why Hattrich's trial counsel might not seek to suppress the manuscript while the parties were engaged in plea negotiations.

¶40 In considering this claim of ineffectiveness, the district court determined that Hattrich's support for this claim contained little more than "conclusory statements" and that Hattrich had therefore failed to establish that counsel's performance, even if objectively deficient, was prejudicial. On appeal, Hattrich fares no better. While he suggests that the State's evidence "was vulnerable to attack in multiple ways" and that he was interested in going to trial, he does not explain why, under the circumstances, counsel not filing a motion to suppress constituted deficient performance. He does not address the State's suggestions that counsel's decision may have been a tactical one. *See State v. Goode*, 2012 UT App 285, ¶ 6, 288 P.3d 306 (stating that an appellate court reviewing a claim of ineffective assistance of counsel employs "a strong presumption that counsel was competent and effective, giving trial counsel wide latitude in making tactical decisions, and we will not question such decisions unless there is no reasonable basis supporting them" (quotation simplified)). We accordingly affirm the district court's grant of summary judgment on this claim.

5.      Warrantless Arrest

¶41 Hattrich contends that trial counsel provided ineffective assistance by not challenging Hattrich's warrantless arrest. Hattrich raised this issue in his direct appeal. *See State v. Hattrich*, 2013 UT App 177, ¶ 11, 317 P.3d 433. But because the issue was unpreserved in the trial court, and because the exceptional circumstances exception to preservation did not apply, this court declined to address the merits of Hattrich's claim. *Id.* ¶ 46.

¶42 In his motion for summary judgment, Hattrich argued that his trial counsel should have raised this issue in the trial court. He contended that he was "prejudiced by counsel's failure to raise this issue in the trial court and by appellate counsel's

failure to assert his right to raise the claim under the plea bargain, or under the doctrine of ineffective assistance of trial counsel." The district court determined that Hattrich failed to show, "with specific facts or adequate legal analysis," either that counsel's performance was deficient or that the lack of a challenge to the warrantless arrest was prejudicial to his defense.

¶43 The State observes, and we agree, that Hattrich again has not demonstrated how a challenge to his warrantless arrest would have been meritorious. Absent such a showing, Hattrich cannot establish that either trial or appellate counsel's performance was deficient. *See State v. Gallegos*, 2018 UT App 192, ¶ 31, 437 P.3d 388 ("When challenging trial counsel's failure to make a motion, part of a defendant's burden under the deficient performance prong is to show that the motion would have been successful had it been made."), *cert. granted*, 437 P.3d 1248 (Utah 2019).

¶44 On appeal, Hattrich does not address the bases for the district court's conclusions. The result is to "shift the burden of research and argument to the reviewing court," which is not our role. *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). We accordingly affirm the district court on this claim.

6.     Advising Hattrich to Plead No Contest

¶45 Hattrich contends that trial counsel performed deficiently by advising him to plead no contest and to agree to the terms of the plea agreement. The plea agreement, he argues, could not bind the appellate court to ignore preservation and adequate briefing requirements in his direct appeal. Because, he contends, trial counsel "should not have advised Hattrich to enter into the illegal plea bargain," counsel's performance was objectively deficient. He relatedly argues that appellate counsel performed deficiently "in failing to raise the prosecution's breach of the plea agreement on appeal." In making these arguments, Hattrich relies on the theory that, in his view, the terms of the no contest plea agreement were illegal and illusory.

¶46 We have already concluded that the plea agreement allowed Hattrich to appeal, in the ordinary course, issues that were raised or litigated in his criminal case but that it did not purport to excuse him from generally applicable preservation and briefing requirements. *See supra* ¶ 19. Consequently, Hattrich cannot establish that counsel was ineffective for advising him to agree to the plea agreement's terms. Likewise, he cannot show that appellate counsel performed deficiently when counsel did not assert that the State had breached the agreement by arguing that Hattrich had failed to preserve certain issues and failed to adequately brief certain issues. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel."). For this reason we affirm the district court's grant of summary judgment to the State.

7.     Motion to Change Venue

¶47 Hattrich's trial counsel filed a motion in the trial court requesting a change of venue. *See generally* Utah R. Crim. P. 29(c) (authorizing a party to request that the case be transferred to another county "if a party believes that a fair and impartial trial cannot be had in the court location or in the county where the action is pending").[10] He asserted that Hattrich is a resident of a small community and that the victims "are all former residents of the same community." He argued that the twenty-seven charges Hattrich faced, twenty-four of which were first-degree felonies, suggested certain conviction "in a small, rural area where everyone knows everyone else." In addition, counsel highlighted the egregiousness of the charges, noted some publicity in local newspapers about

---

10. The change of venue provision in rule 29 of the Utah Rules of Criminal Procedure has been amended since Hattrich's trial counsel filed his motion in 2010. We cite the current version, however, because the provision's changes are relatively minor and because we do not engage in any analysis of the rule.

Hattrich's case, and ultimately questioned whether the court could seat a fair and impartial jury. The trial court denied the motion, Hattrich raised this issue in his direct appeal, and this court affirmed. *See State v. Hattrich*, 2013 UT App 177, ¶¶ 12–18, 317 P.3d 433.

¶48 Hattrich contends that his trial and appellate counsel presented inaccurate facts supporting the motion to change venue. He asserts that two of the victims were still living in the same small town and sparsely populated county as Hattrich and had not moved away and grown into adulthood as his trial and appellate counsel suggested. He further asserts that his counsel "should have argued well-established law recognizing that when heinous crimes are committed in small communities, the impact on the public consciousness is greater and lasts longer, and the likelihood is that more people will have been affected by the crimes." *See State v. James*, 767 P.2d 549, 553–54 (Utah 1989) ("In a small town, a major crime is likely to be embedded in the public consciousness with greater effect and for a longer time than it would be in a large, metropolitan area.").

¶49 The State counters, and we agree, that Hattrich's counsel "litigated venue under the correct governing authority and gave the trial and appellate courts ample sense of Hattrich's close contact with the 'tight-knit' community . . . , the seriousness of his charges, and the publicity surrounding the charges." Counsel argued that the factors identified in *James* warranted a change in venue. *See id.* at 552. Applying those factors to the facts of Hattrich's case, this court disagreed. *Hattrich*, 2013 UT App 177, ¶ 14.

¶50 It is certainly possible that Hattrich's counsel could have offered additional facts to support the change of venue motion and in the brief on appeal, and perhaps even offered different arguments on the point. However, Hattrich does not establish that but for counsel's failure to incorporate additional facts in the motion, Hattrich would have rejected the plea agreement and

insisted on a trial.[11] Because he does not establish that he was prejudiced by any error of counsel, his claim of ineffective assistance of counsel is unsuccessful. *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 ("To prove ineffective assistance of counsel, defendant must show: (1) that counsel's performance was objectively deficient, and (2) a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome . . . ."). We accordingly affirm the district court's grant of summary judgment to the State on this claim.

8.      Preliminary Hearing Issues

¶51    Hattrich contends that trial counsel should have renewed a motion to continue the preliminary hearing and should have argued that Hattrich had a constitutional right to examine an absent witness. The district court concluded that Hattrich's latter contention—his confrontation-clause argument—under the state and federal constitutions was raised and disposed of in Hattrich's direct appeal. *See Hattrich*, 2013 UT App 177, ¶¶ 29–32. Consequently, his confrontation-clause argument was precluded under the PCRA. *See* Utah Code Ann. § 78B-9-106(1)(b) (LexisNexis 2018). Hattrich does not address this aspect of the district court's decision.

¶52    As to Hattrich's first contention—that counsel should have renewed a motion to continue the preliminary hearing—the district court concluded that he failed to establish either deficient performance or prejudice. On appeal, Hattrich generally asserts that "counsel's deficient performance was

---

11. To the extent that Hattrich wishes to revisit our decision affirming the trial court's denial of the venue motion, that relief is not available through the PCRA. *See* Utah Code Ann. § 78B-9-106(1)(b) (LexisNexis 2018) ("A person is not eligible for relief under this chapter upon any ground that . . . was raised or addressed at trial or on appeal.").

procedurally prejudicial" and that appellate counsel "should have raised these claims on direct appeal, utilizing [rule] 23B" of the Utah Rules of Appellate Procedure. Without more, Hattrich cannot carry his burden of persuasion. Although mentioning prejudice, he does not establish it. He does not show, for instance, that but for counsel's failure to renew the motion to continue, Hattrich "would have obtained a more favorable outcome." *See Clark*, 2004 UT 25, ¶ 6. We are therefore unpersuaded.

## III. The Motion for Discovery

¶53    Finally, Hattrich argues that the district court erred when it denied his request for discovery. Rule 65C of the Utah Rules of Civil Procedure governs petitions filed under the PCRA. *See generally* Utah Code Ann. §§ 78B-9-101 to -405 (LexisNexis 2018). Discovery in these proceedings is not automatic, but is authorized "upon motion of a party and a determination that there is good cause to believe that discovery is necessary to provide a party with evidence that is likely to be admissible at an evidentiary hearing." Utah R. Civ. P. 65C(n)(1).

¶54    Both Hattrich and the State moved for summary judgment on Hattrich's petition for post-conviction relief, each asserting that there were no genuine disputes as to any material facts. *See id.* R. 56(a). As the briefing proceeded on his motion for summary judgment, Hattrich filed a separate motion pursuant to rule 65C(n) requesting permission to engage in discovery related to his *Frye* claim. *See supra* Part II.B.1. Hattrich specifically sought the details of the plea negotiations between trial counsel and the prosecutor and the details of a plea offer that he alleged trial counsel failed to fully communicate. Hattrich's counsel noted she did not believe these factual details were necessary to state the *Frye* claim but requested the discovery nonetheless.

¶55    Importantly, while requesting authorization to engage in discovery, Hattrich did not seek to continue the summary judgment proceedings on the basis that he could not "present

facts essential to justify [his] opposition." *See* Utah R. Civ. P. 56(d) (authorizing a court to defer consideration of a summary judgment motion to allow further discovery necessary to justify a nonmoving party's opposition). Accordingly, we agree with the State that under the circumstances, the district court did not abuse its discretion in denying Hattrich's request for discovery under rule 65C(n).

CONCLUSION

¶56　The district court correctly granted summary judgment to the State and denied Hattrich's petition for post-conviction relief. Hattrich knowingly and voluntarily entered into his no contest pleas. The State did not breach the plea agreement by arguing in Hattrich's direct appeal that Hattrich had not preserved certain issues in the trial court and that he had inadequately briefed certain issues. Hattrich has not established that he received constitutionally ineffective assistance of counsel. And the district court did not exceed its discretion when it denied Hattrich's motion for discovery. Accordingly, we affirm.

————————